IN THE MATTER OF: PAUL JONAS ROBINSON

No. COA01-817

(Filed 6 August 2002)

**1. Juveniles— capacity to proceed—evaluations**

The trial court did not err by finding a juvenile capable of proceeding where 2 doctors from Dorothea Dix found the juvenile capable, a private psychologist found him incapable, and the trial court ordered an evaluation by the chief of forensic psychiatry at Dorothea Dix, who found the juvenile capable of proceeding. There was no merit to the juvenile's contention that the chief psychiatrist's evaluation was inherently unreliable or biased because it was based in part on information gathered by one of his employees.

**2. Juveniles— commitment—not an abuse of discretion**

The trial court did not abuse its discretion by committing a juvenile to the Department of Juvenile Justice and Delinquency

Prevention where the court had before it assessments of needs and risks and the court found that it was in the juvenile's best interest to be committed given the severity of the case, the lack of progress, and the alternatives available in the community.

Appeal by respondent from judgment entered 11 December 2000 by Judge Lisa Thacker in Union County District Court. Heard in the Court of Appeals 18 April 2002.

*Donna B. Stepp, attorney for respondent-appellant.*

*Roy Cooper, Attorney General, by Lisa Granberry Corbett, Assistant Attorney General, for the State.*

THOMAS, Judge.

Juvenile respondent, Paul Jonas Robinson, was adjudicated delinquent after admitting to the following offenses: (1) assault with a deadly weapon with intent to kill inflicting serious injury; (2) robbery with a dangerous weapon; and (3) felonious larceny. He was committed to the Department of Juvenile Justice and Delinquency Prevention (the Department) for a period not to exceed his nineteenth birthday.

The juvenile appeals, contending the trial court erred: (1) in finding him capable of proceeding; and (2) by committing him to the Department. Based on the reasons herein, we affirm.

The State's evidence tends to show the following: On 7 February 2000, the fourteen-year-old juvenile shot his mother with a .12 gauge shotgun through the bathroom door at home. She was hit in the right arm and chest, resulting in serious injuries. The juvenile then took $20.00 from her and drove his father's car to South Carolina before finally wrecking.

The juvenile was taken into custody and returned to North Carolina. During questioning by Union County Sheriff's Department Detective Robert Rollins, the juvenile said "the devil" made him shoot his mother. He further claimed the shotgun he used was similar to Detective Rollins's handgun, and that after the shooting he threw the weapon into the water behind his home.

At the juvenile's first appearance, his counsel moved to commit him to Dorothea Dix Hospital for an examination to determine capacity to proceed. Doctors Manuel Versola, M.D., and Tricia Hahn, Ph.D., L.P., conducted exams and concluded that the juvenile suffered from

no mental illness or retardation. They found him capable of proceeding. The juvenile then applied for and received an evaluation by a private psychologist, Dr. Frank Gaskill, Ph.D. Gaskill determined that the juvenile suffers from moderate mental retardation and schizophreniform disorder. As a result, Gaskill found him incapable of proceeding.

At a subsequent hearing, the trial court ruled that due to conflicting testimonies it could not make a determination as to capacity to proceed. The trial court then ordered an evaluation by Dr. Robert Rollins, M.D., Chief of Forensic Psychiatry at Dorothea Dix. Rollins found the juvenile capable of proceeding to trial. He based his evaluation on interviews with the juvenile and a review of the evaluations by Gaskill and Versola, a state employee at Dorothea Dix under Rollins's supervision.

The trial court concluded that the juvenile was competent to proceed in that the juvenile was able to understand the nature of the proceedings and to assist his attorney. There is no indication in the record of a probable cause hearing, a waiver of probable cause, or a transfer hearing in accordance with Article 22 of the Juvenile Code. There is a Transcript of Plea, however, with the juvenile entering admissions to the offenses and expressly reserving the right to appeal the issue of competency. The trial court then adjudicated the juvenile delinquent.

At the dispositional hearing, assessments by a juvenile court counselor indicated a medium risk of re-offending with the juvenile's needs level being high. The trial court found the juvenile to be at a Level 2 or Level 3 Disposition under N.C. Gen. Stat. § 7B-2508 (2001), and ordered a Level 3 Disposition. He was committed to the Department for a term not to exceed his nineteenth birthday.

[1] By his first assignment of error, the juvenile contends the trial court erred in finding him capable of proceeding. We disagree.

Section 7B-2401 of the North Carolina Juvenile Codes states that the provisions of sections 15A-1001 to 15A-1003 apply to all cases in which a juvenile is alleged to be delinquent. N.C. Gen. Stat. § 7B-2401 (2001). Sections 15A-1001 to 15A-1003 of the North Carolina Criminal Procedure Act relate to a defendant's capacity to proceed. N.C. Gen. Stat. §§ 15A-1001 to 15A-1003 (2001). Under section 15A-1001:

(a) No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is

unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C. Gen. Stat. § 15A-1001. Under section 15A-1002, the issue of capacity is within the trial court's discretion, and "[the] determination thereof, if supported by the evidence, is conclusive on appeal." *State v. Reid*, 38 N.C. App. 547, 548-49, 248 S.E.2d 390, 391 (1978), *disc. review denied*, 296 N.C. 588, 254 S.E.2d 31 (1979).

The juvenile's primary contention is that the method used by the trial court in determining capacity constituted error. Rather than appoint Rollins to conduct a third evaluation, the juvenile argues, the trial court should have appointed an independent psychiatrist with no affiliation to either Versola or Gaskill. The juvenile maintains that Rollins's report was unreliable and biased because the conclusions in it were based in part on information previously gathered by Versola, one of his employees.

In his evaluation, Rollins sets forth the following bases for his opinions: (1) interviews with the patient; (2) observation of ward behavior; (3) routine laboratory and medical studies; (4) review of Versola's evaluation; (5) review of Gaskill's evaluation; (6) repeat psychological testing; and (7) contact with the juvenile's attorney and court counselor. We find no merit to the juvenile's contention that Rollins's evaluation was inherently unreliable or biased. The evidence presented by the State was sufficient to support the trial court's finding. Accordingly, we reject this assignment of error.

**[2]** By his second assignment of error, the juvenile contends the trial court erred in committing him to the Department. We disagree.

Juvenile dispositions in delinquency proceedings are controlled by N.C. Gen. Stat. § 7B-2500 *et seq.* For offenses occurring on or after 1 July 1999, courts are no longer bound by the language of former N.C. Gen. Stat. § 7A-646 (1998). Under the new Code, the directives found in former section 7A-646 that the trial court "select the least restrictive disposition" which is appropriate and that "[a] juvenile should not be committed to training school or to any other institution if he can be helped through community-level resources" have been deleted. *See* N.C. Gen. Stat. § 7B-2501(c) (2001). The trial court is now required to "select the most appropriate disposition," one that is

designed to "protect the public and to meet the needs and best interests of the juvenile," based on a list of enumerated factors. *Id.* A textual analysis shows a more balanced statutory design emphasizing appropriate dispositions, with some limitations, rather than what had been interpreted as a mandate for the least restrictive alternative under the circumstances. *See In re Bullabough*, 89 N.C. App. 171, 185-86, 365 S.E.2d 642, 650 (1988).

Upon an adjudication of delinquency, a juvenile now is placed in a level of punishment, 1, 2, or 3, depending on the juvenile's delinquency history and the type of offense committed. Here, the juvenile was found delinquent for two offenses classified as violent, and one classified as serious. *See* N.C. Gen. Stat. § 7B-2508(a) (2001). He has a "low" delinquency history level. *See* N.C. Gen. Stat. § 7B-2507 (2001). Accordingly, under section 7B-2508(f), the disposition may be at either Level 2 or Level 3. N.C. Gen. Stat. § 7B-2508(f) (2001). Level 2 is an intermediate disposition, primarily community based, while Level 3 carries a commitment to the Department. *Id.*

Once a juvenile is placed in a dispositional level, the statutes provide dispositional alternatives which may be utilized by the trial court. However, in those instances where there is a choice of level, there are no specific guidelines solely directed at resolving that issue. Accordingly, choosing between two appropriate dispositional levels is within the trial court's discretion. Absent an abuse of discretion, we will not disturb the trial court's choice. "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 84 (1998) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

There are overall guidelines for the trial court within the Juvenile Code, however, including but not limited to, section 7B-2501(c) as well as section 7B-2500, titled "Purpose," which provides:

The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction, including the protection of the public. The court should develop a disposition in each case that:

(1) Promotes public safety;

GODFREY LUMBER CO. v. HOWARD

[151 N.C. App. 738 (2002)]

(2) Emphasizes accountability and responsibility of both the parent, guardian, or custodian and the juvenile for the juvenile's conduct; and

(3) Provides the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of the community.

N.C. Gen. Stat. § 7B-2500 (2001).

The trial court here had before it both a risk of future offending assessment and a needs assessment. The record reveals the juvenile's risk level of future offending, 14, is at the top of the medium risk range. His total needs score was 23, the bottom of the high range. Further, the trial court found that: "Given the severity of the case, the lack of progress thus far, and the alternatives that appear to be available here in the community, [the] Court finds it is in the juvenile's best interest" to be committed. The trial court's order for a Level 3 disposition is the result of a reasoned decision. Accordingly, the trial court did not abuse its discretion and we reject this assignment of error.

AFFIRMED.

JUDGES MARTIN and TYSON concur.