IN THE MATTER OF: N.B.

No. COA03-1653

(Filed 7 December 2004)

**1. Juveniles— misdemeanor assault with a deadly weapon— felonious assault with a deadly weapon inflicting serious injury—issuance of subsequent felony petition**

The trial court did not violate a juvenile's due process rights by allowing the State to prosecute her for felonious assault with a deadly weapon inflicting serious injury even though she had been previously charged with misdemeanor assault with a deadly weapon and the misdemeanor petition had not been dismissed at the time of the felonious assault hearing, because: (1) regardless of whether the juvenile formally denied the allegations contained in the initial misdemeanor petition, the issuance of the subsequent felony petition did not violate the juvenile's constitutional rights; (2) the second petition alleging felony assault was served on the juvenile two months before the adjudicatory hearing; (3) the juvenile was in no way prejudiced since there was no hearing on the merits of the first petition; and (4) the record is void of any evidence that would suggest the filing of the second petition was for retaliatory purposes.

**2. Sentencing— juveniles—assault with a deadly weapon inflicting serious injury—Level 3 disposition—abuse of discretion standard**

The trial court did not err by imposing a Level 3 disposition on a juvenile for committing the offense of assault with a deadly weapon inflicting serious injury even though the juvenile had no prior delinquency history, had a low risk of re-offending, and an assessment of her needs was low as well, because: (1) the court

IN RE N.B.

[167 N.C. App. 305 (2004)]

had the authority under N.C.G.S. § 7B-2508(f) to impose either a Level 2 or Level 3 disposition, and it was within the court's discretion to determine which dispositional alternative to impose; and (2) there was no evidence that the court abused its discretion by imposing Level 3 when the court considered evidence that the juvenile failed to return to school at the end of her five-day suspension and had been absent from school for more than one hundred days.

Appeal by respondent juvenile from order dated 9 September 2003 by Judge Robert A. Evans in Nash County District Court. Heard in the Court of Appeals 15 September 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Bertha L. Fields, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for respondent-appellant.*

BRYANT, Judge.

N.B. (juvenile) appeals an order adjudicating her as a delinquent juvenile for having committed the offense of assault with a deadly weapon inflicting serious injury and a disposition order committing the juvenile to the Youth Development Center of the North Carolina Department of Juvenile Justice and Delinquency Prevention for a minimum period of six months and for a maximum period not to exceed her eighteenth birthday.

On 17 April 2003, N.B. (born 1 August 1987) was charged in a juvenile petition with misdemeanor assault with a deadly weapon in violation of N.C. Gen. Stat. § 14-33(c)(1). A subsequent petition was filed on 23 June 2003, charging N.B. with felonious assault with a deadly weapon inflicting serious injury in violation of N.C. Gen. Stat. § 14-32(b). The second petition came on for hearing on 9 September 2003.

The State's evidence tended to show the following: On 10 March 2003, a fight ensued between 15-year-old N.B., another juvenile (N.B.'s associate), and the victim in Economic, Legal and Political Systems class at Rocky Mount Senior High School. The victim was seated at the back of the classroom when N.B.'s associate approached the victim and stated she heard the victim wanted to fight her. After a verbal exchange between the victim and N.B.'s associate, N.B. approached

the victim from behind and hit her in the face with a white ballpoint pen. The three parties began to fight and the fight continued until the classroom teacher subdued the parties. After the fight, the victim discovered she was bleeding and there were scratch marks on and a hole in her face, in addition to ink marks all over her face and arm. The victim was hospitalized for three days as a result of the injuries.

The victim's mother testified for the State that when she picked her daughter up from school, she noticed puncture wounds on her daughter's face. She accompanied her daughter to the hospital where her daughter was treated for injury to the outer layer of her eyeball. She also testified that as of the date of the hearing, her daughter was still receiving medical care for her injuries.

Both N.B. and her associate, testifying on N.B.'s behalf, admitted that they participated in a fight with the victim, but denied starting the fight. Both also denied stabbing the victim in the face with a white ballpoint pen, denied having a white ballpoint pen in their possession during the fight, and further denied seeing a white ballpoint pen in the classroom during the fight.

On rebuttal, the State called a fourth student to testify. This student stated that while in the hallway before class, he overhead N.B. and her associate saying they were going to jump on the victim. This student, however, did not witness the fight.

The juvenile court adjudicated N.B. delinquent for having committed the offense of assault with a deadly weapon inflicting serious injury and immediately moved to disposition. The juvenile court accepted the pre-disposition report prepared by the court counselor into evidence, which contained an assessment of the juvenile's risk of future offending. The report total scores indicated N.B. had a low risk of future offending and had a low need. Because N.B. had been adjudicated delinquent for having committed a violent felony, the juvenile court had a choice of imposing a Level 2 or Level 3 disposition.[1]

The juvenile court, expressing concern about the number of days the juvenile had been absent from school since the fight, questioned why N.B. could not account for why she had not attended school since the fight. The juvenile court went on to impose a Level 3 dispo-

---

1. In accordance with N.C. Gen. Stat. § 7B-2508(f), the juvenile court has the authority to impose either a Level 2 or Level 3 disposition when the juvenile has a low risk factor but has been adjudicated for having committed a violent offense. N.C.G.S. § 7B-2508(f) (2003).

**IN RE N.B.**

[167 N.C. App. 305 (2004)]

sition and ordered N.B. to be committed to the Youth Development Center of the North Carolina Department of Juvenile Justice and Delinquency Prevention for a minimum period of six months and for a maximum period not to exceed her eighteenth birthday.

N.B. gave timely notice of appeal.

---

The issues on appeal are whether: (I) the juvenile's due process rights were violated when she was prosecuted for felonious assault with a deadly weapon inflicting serious injury after she had already been charged with misdemeanor assault with a deadly weapon; and (II) the juvenile court erred in imposing a Level 3 disposition.

I

[1] The juvenile first argues that her due process rights were violated when the juvenile court allowed the State to prosecute her for felonious assault with a deadly weapon inflicting serious injury, when she had been previously charged with misdemeanor assault with a deadly weapon and the misdemeanor petition had not been dismissed at the time of the felonious assault hearing.

While juvenile proceedings in this State are not criminal prosecutions, a juvenile cited under a petition to appear for an inquiry into her alleged delinquency is entitled to the constitutional safeguards of due process and fairness. These safeguards include notice of the charge or charges upon which the petition is based. *See In re Burrus*, 275 N.C. 517, 529-30, 169 S.E.2d 879, 887 (1969); *In re Jones*, 11 N.C. App. 437, 438, 181 S.E.2d 162, 162 (1971); *In re Alexander*, 8 N.C. App. 517, 520, 174 S.E.2d 664, 666 (1970).

On 13 May 2003, a summons was issued requiring the juvenile to appear in Nash County Juvenile Court on 10 June 2002, to answer a petition alleging she had committed the offense of assault with a deadly weapon on 10 March 2003. The juvenile appeared in court on 10 June 2003, and denied the misdemeanor assault charge against her. This matter was continued until 1 July 2003.

Three days later, on 13 June 2003, a juvenile petition was sworn out against the juvenile alleging she had committed the offense of assault with a deadly weapon inflicting serious injury on 10 March 2003. This petition was filed on 16 June 2003, and the clerk of superior court issued a summons on 23 June 2003, requiring the juvenile to appear in juvenile court on 1 July 2003.

At the time of the 9 September 2003 hearing, the juvenile had both the misdemeanor and felonious assault charges pending. The juvenile court found the juvenile delinquent for having committed felonious assault but did not address the misdemeanor assault charge. The misdemeanor charge was subsequently dismissed sometime after the 9 September 2003 hearing.

In this assignment of error, the juvenile contends she was actually tried on duplicate misdemeanor and felony charges arising from the same course of conduct, and further that the State brought the felony charge in retaliation for her denying the allegation in the misdemeanor petition. These arguments are without merit.

Regardless of whether the juvenile formally denied the allegations contained in the initial misdemeanor petition, the issuance of the subsequent felony petition did not violate the juvenile's constitutional rights. The second petition, alleging felony assault, was served on the juvenile two months before the adjudicatory hearing. At the 9 September 2003 hearing, the State read the charges contained in the second petition and requested a responsive plea to that charge. The record and transcript reveal that the juvenile denied the allegations of the second petition and the juvenile court proceeded solely on the matters contained in the second petition.

The juvenile argues that this Court's holding in *State v. Bissette*, 142 N.C. App. 669, 544 S.E.2d 266 (2001), precluded the State from indicting the juvenile and proceeding with prosecution on the felony charge while the misdemeanor charge remained pending. The juvenile's reliance on *Bissette*, however, is misguided. In *Bissette*, the defendant was arrested and charged with violating N.C. Gen. Stat. § 14-74 (felonious larceny by servants and other employees). The charge was subsequently reduced to misdemeanor larceny, and the defendant pled not guilty to the misdemeanor larceny charge. The defendant was tried and convicted in district court on the misdemeanor larceny charge and thereafter appealed for a trial *de novo* in superior court. After giving notice of appeal to superior court, the State then indicted defendant for felonious larceny by an employee. The State acknowledged both the felony and misdemeanor charges were still on the docket, and announced its intention to try the felony charge and informed the superior court it would dismiss the misdemeanor charge at the conclusion of trial *de novo*. The defendant was convicted of felony larceny in superior court and gave notice of appeal to this Court.

IN RE N.B.

[167 N.C. App. 305 (2004)]

This Court held that a defendant who is convicted of a misdemeanor "is entitled to pursue [her] right to trial *de novo* in superior court without apprehension that the State will retaliate by substituting a felony charge for the original misdemeanor and thus subject her to a potentially greater period of incarceration." *Bissette*, 142 N.C. App. at 672, 544 S.E.2d at 267 (citing *Blackledge v. Perry*, 417 U.S. 21, 28, 40 L. Ed. 2d 628, 634-35). Relying on *Blackledge*, this Court concluded that the State's actions amounted to a violation of the defendant's due process rights. *Bissette*, 142 N.C. App. at 673, 544 S.E.2d at 268. This Court also "emphasized that this result did not depend upon a showing of actual retaliatory motive on the part of the prosecutor, since it was the mere potential for vindictiveness entering into the two-tiered appellate process which constituted a violation of the defendant's rights." *Bissette*, 142 N.C. App. at 672, 674-75, 544 S.E.2d at 267, 269 ("A prosecutor's pre-trial . . . election to seek conviction only for some of the offenses charged in the indictment 'becomes binding on the State and tantamount to acquittal of charges contained in the indictment . . . when jeopardy has attached as the result of a jury being impaneled and sworn to try the defendant.' " (citation omitted)).

In the instant case, the juvenile was in no way prejudiced since there was no hearing on the merits of the first petition. Therefore, the hearing on the second petition did not violate the juvenile's constitutional rights. Further, the record is void of any evidence that would suggest the filing of the second petition was in anyway retaliatory. This assignment of error is overruled.

II

[2] The juvenile next argues that the juvenile court erred by imposing a Level 3 disposition when she had no prior delinquency history, had a low risk of re-offending and an assessment of her needs was low as well.

Pursuant to the juvenile code, the juvenile court is required to select the "most appropriate disposition" calculated to both "protect the public and to meet the needs and best interests of the juvenile." N.C.G.S. § 7B-2501(c) (2003)[2]; *In re Robinson*, 151 N.C. App.

---

2. (c) In choosing among statutorily permissible dispositions, the court shall select the most appropriate disposition both in terms of kind and duration for the delinquent juvenile. Within the guidelines set forth in G.S. 7B-2508, the court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile, based upon:

733, 736-37, 567 S.E.2d 227, 229 (2002) ("The [district] court is now required to 'select the most appropriate disposition,' one that is designed to 'protect the public and to meet the needs and best interests of the juvenile' . . . rather than what had been interpreted as a mandate for the least restrictive alternative under the circumstances.") (citations omitted). In the instant case, the juvenile was adjudicated delinquent for having committed assault with a deadly weapon inflicting serious injury. The juvenile's delinquency history level was determined to be low. *See* N.C.G.S. § 7B-2507 (2003). Thus, in accordance with N.C. Gen. Stat. § 7B-2508(f), the juvenile court had the authority to impose either a Level 2 or Level 3 disposition. In addition, it was within the juvenile court's discretion to determine which dispostional alternative to impose. *See* N.C.G.S. § 7B-2506; *In re Hartsock*, 158 N.C. App. 287, 292, 580 S.E.2d 395, 399 (2003).

It is well settled that a decision vested in the discretion of the juvenile court will not be disturbed absent clear evidence that the decision was manifestly unsupported by reason. *Robinson*, 151 N.C. App. at 737, 567 S.E.2d at 229. Here, there is no evidence that the juvenile court abused its discretion in imposing a Level 3 disposition. The record reveals that the juvenile court considered evidence that the juvenile failed to return to school at the end of her five-day suspension, and that she had been absent from school for more than one hundred days. Further, the record reveals that the juvenile court had before it undisputed evidence that both the juvenile and her mother knew the juvenile was eligible to return to school after the five-day suspension, but were unable to offer an explanation for the juvenile's failure to return to school. The juvenile has not shown the juvenile court's decision to impose a Level 3 disposition amounted to an abuse of discretion. This assignment of error is overruled.

Affirmed.

Judges HUDSON and TYSON concur.

---

(1) The seriousness of the offense;

(2) The need to hold the juvenile accountable;

(3) The importance of protecting the public safety;

(4) The degree of culpability indicated by the circumstances of the particular case; and

(5) The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.

N.C.G.S. § 7B-2501(c) (2003).