IN THE MATTER OF: T.B., JUVENILE

No. COA05-521

(Filed 18 July 2006)

**Juveniles— probation violation—commitment not permissible disposition at Level 2**

The trial court erred by committing a juvenile to a youth development center for an indefinite term on 1 June 2004 based on his probation violations in a 6 May 2004 order, because: (1) the pertinent question with respect to the probation violation was not how many points the juvenile had, but rather what dispositional alternatives were statutorily authorized for a Level 2 disposition; and (2) our case law and the pertinent statutes establish that commitment is not a statutorily permissible disposition at Level 2 under N.C.G.S. § 7B-2506(1) through (23) when it is addressed by N.C.G.S. § 7B-2506(24).

Appeal by juvenile from order entered 1 June 2004 by Judge Elaine M. O'Neal in Durham County District Court. Heard in the Court of Appeals 7 December 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gail E. Dawson, for the State.*

*Appellate Defender Staples Hughes for defendant-appellant.*

GEER, Judge.

T.B., a juvenile, appeals from a final disposition order committing him to the Department of Juvenile Justice for an indefinite term. We conclude that, under the circumstances of this case, the trial court was not statutorily authorized to order a disposition of commitment

based on T.B.'s probation violations. Accordingly, we reverse and remand for further proceedings.

### Facts

T.B. was first adjudicated delinquent on 13 June 2003 based upon his admission of allegations of misdemeanor possession of stolen goods and assault inflicting serious injury. The trial court gave T.B. a Level 1 disposition of one-year supervised probation. Among other conditions, T.B.'s probation required T.B. to "obey [his] parents at all times," "attend school regularly and maintain good behavior while there," "report to [his] court counselor," and "cooperate with therapy."

On 28 April 2004, the trial court held a hearing on a motion for review filed by the State, alleging that T.B. had violated his probation by not following the rules both at school and at home. T.B. admitted the allegations, and the court found him in violation of his probation. In an order filed 6 May 2004, the court elevated T.B.'s disposition to a Level 2 and extended his probation for one year from 28 April 2004. Among the conditions added to his probation were: (1) T.B. was "placed on a stayed commitment to training school"; (2) the court provided for 28 24-hour periods of secure custody to be used at the court counselor's discretion; (3) T.B. was to remain on intensive probation until released by the court counselor; and (4) T.B. was to have no unexcused absences, no tardies, and no school suspensions. The court also scheduled another hearing for 1 June 2004, at which the court counselor would submit a status report as to T.B.'s progress. In the 28 April 2004 hearing, the court warned T.B. that if he failed to comply with the terms of his probation, "we got a cell for you with your name on it."

At the 1 June 2004 hearing, T.B.'s case manager read a summary of T.B.'s behavior into evidence, which stated that "[T.B.] is currently out of control. [He] continues to break house rules by missing curfew, using alcohol and drugs and affiliate [sic] with gang members." The case manager also testified that "[T.B.] has become more rebellious against his father and mother." T.B.'s court counselor testified in a similar fashion and enumerated several of the ways in which T.B. was not complying with the 28 April 2004 order. The court entered an order on 1 June 2004 providing, without further findings of fact: "Based on the (MFR) violation the juvenile was found to be in violation. He was admitted to Department of Juvenile Justice. Level 3 commitment disposition (per Judge O'Neal)." This "finding" appears

to refer to the "MFR" (or motion for review) that was adjudicated in April 2004 and the probation violations found at that time. The court thereafter ordered an indefinite term of commitment. T.B. timely appealed.

## Discussion

T.B. argues on appeal that the trial court was without authority to enter a Level 3 juvenile disposition of commitment to a youth development center. "[C]hoosing between . . . appropriate dispositional levels is within the trial court's discretion." *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002). Accordingly, when a district court selects a disposition that is authorized by statute, this Court will not overturn its choice unless it " 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *Chicora County Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 84 (1998)). We agree with T.B.'s contention that the disposition imposed by the trial court in this case was not authorized by statute.

Following T.B.'s original delinquency adjudication, the trial court was authorized by N.C. Gen. Stat. § 7B-2508 (2005) to impose either a Level 1 or a Level 2 disposition based on his delinquency history level ("low") and the class of his offense ("serious"). The court chose to impose a Level 1 disposition with one year of supervised probation.

When the trial court concluded on 28 April 2004 that T.B. had violated his probation, it was then governed by N.C. Gen. Stat. § 7B-2510 (2005). Under that statute, "[i]f the court, after notice and a hearing, finds by the greater weight of the evidence that the juvenile has violated the conditions of probation set by the court, the court may continue the original conditions of probation, modify the conditions of probation, *or . . . order a new disposition at the next higher level.*" N.C. Gen. Stat. § 7B-2510(e) (emphasis added). Accordingly, the trial court was statutorily authorized to order a new disposition at Level 2, the next higher level, in the 6 May 2004 order. Of the additional conditions imposed in the 6 May 2004 order, T.B. argues only that the trial court's provision for "a stayed commitment to training school" was not authorized as a Level 2 disposition.

At the 28 April 2004 hearing, before ordering the stayed commitment, the trial court asked: "How many points has [T.B.] got at this point, including his probation, where we're at now?" The State's attorney told the court that she thought T.B. had four points, to which

**IN RE T.B.**

[178 N.C. App. 542 (2006)]

the court responded: "All right. He's got enough for training school at this point. We got enough for a stayed commitment. I gotcha where I want you now." Later, the trial court stated: "So I know you're getting a stayed commitment today. You got enough points." The trial court apparently misapprehended the role of "points."[1]

Under the Juvenile Code, "points" are used to determine a juvenile's delinquency history level. *See* N.C. Gen. Stat. § 7B-2507 (2005) ("The delinquency history level for a delinquent juvenile is determined by calculating the sum of the points assigned to each of the juvenile's prior adjudications and to the juvenile's probation status . . . ."). This history level is then used as part of the calculation for determining the juvenile's disposition level after an adjudication of delinquency; the trial court must also consider the seriousness of the present offenses in order to arrive at the available dispositional alternatives. N.C. Gen. Stat. § 7B-2508(f).

The pertinent question with respect to the probation violation was not how many "points" T.B. had, but rather what dispositional alternatives were statutorily authorized for a Level 2 disposition. A trial court ordering a Level 2 disposition "may provide for . . . any of the dispositional alternatives contained in subdivisions (1) through (23) of G.S. 7B-2506 . . . ." N.C. Gen. Stat. § 7B-2508(d). The State contends that N.C. Gen. Stat. § 7B-2506(19) (2005) authorized the stayed commitment. That subsection does permit a trial court to "[s]uspend imposition of a more severe, statutorily permissible disposition with the provision that the juvenile meet certain conditions agreed to by the juvenile and specified in the dispositional order." The State does not, however, address the requirement that the more severe disposition be "statutorily permissible."

Our case law and the pertinent statutes establish that commitment is not a statutorily permissible disposition at Level 2. Commitment is addressed by N.C. Gen. Stat. § 7B-2506(24) and, therefore, is not one of the statutorily permitted Level 2 dispositions authorized by N.C. Gen. Stat. § 7B-2508(d) (noting Level 2 dispositions are set forth in N.C. Gen. Stat. § 7B-2506(1) through (23)). This Court has, consistent with the statutory provisions, observed: "A Level 2 dispositional limit—or intermediate disposition—does not provide for commitment of the juvenile to training school as one of the 'intermediate' dispositional alternatives." *In re Allison*, 143 N.C.

---

1. Since T.B. had no prior adjudications of delinquency, these "points" arose solely from the adjudication in this case and the probation violation.

IN RE T.B.

[178 N.C. App. 542 (2006)]

App. 586, 597, 547 S.E.2d 169, 176 (2001). *See also Robinson*, 151 N.C. App. at 737, 567 S.E.2d at 229 ("Level 2 is an intermediate disposition, primarily community based, while Level 3 carries a commitment to the Department."); N.C. Gen. Stat. § 7B-2508(e) (providing that commitment is a Level 3 disposition).[2] Since commitment is not a permissible Level 2 disposition, the trial court could not, under N.C. Gen. Stat. § 7B-2506(19), impose a stayed commitment in its 6 May 2004 order.

Further, the validity of the indefinite commitment ordered on 1 June 2004 hinges on whether the 6 May 2004 stayed commitment was proper. The 1 June 2004 order, as well as the transcript of the 1 June 2004 hearing, indicate that the order of indefinite commitment resulted from the trial court vacating its earlier stay of the commitment imposed in the 6 May order. Indeed, in its 1 June 2004 order, the trial court did not make any findings of further probation violations or enter any other findings to support a Level 3 disposition of commitment. *See* N.C. Gen. Stat. § 7B-2512 (2005) (requiring that the dispositional order contain appropriate findings of fact to support its conclusions of law). Instead, the court stated only that it was ordering commitment based on the probation violations admitted in response to the motion for review adjudicated in April 2004.

Because commitment is not an "allowable [Level 2] disposition[]," N.C. Gen. Stat. § 7B-2506(19), the trial court was not authorized to impose commitment, stayed or otherwise, in the 6 May 2004 order. Since the 6 May 2004 probation violation order was the sole basis specified for the 1 June 2004 indefinite commitment, we must reverse and remand for imposition of a statutorily authorized Level 2 disposition.

Reversed and remanded.

Judges HUNTER and McCULLOUGH concur.

---

2. We note that, with respect to Level 2 dispositions, the trial court "may impose a Level 3 disposition if the juvenile has previously received a Level 3 disposition in a prior juvenile action." N.C. Gen. Stat. § 7B-2508(d). T.B., however, does not fall into this category.