IN THE MATTER OF: D.K.H.
No. COA07-1003
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Gail E. Dawson, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for respondent-appellant.
GEER, Judge.
D.K.H., a juvenile, appeals from a disposition order committing him to the Department of Juvenile Justice for an indefinite term following an adjudication of delinquency based on his admission that he committed a robbery with a dangerous weapon. On appeal, the juvenile argues primarily that the trial judge failed to exercise his discretion, but rather imposed a disposition based upon a personal policy with respect to armed robbery of committing juveniles to a youth development center. Based upon our review of the record, it is apparent that the trial judge properly considered the factors set out in N.C. Gen. Stat. § 7B-2501(c) (2007) and rendered his disposition based on the particular facts of this case. We, therefore, affirm.

Facts
In February 2007, the State filed a juvenile petition alleging that the juvenile committed the offense of robbery with a dangerous weapon in violation of N.C. Gen. Stat. § 14-87 (2007). At the 29 March 2007 hearing, the juvenile admitted committing the offense. In return for his admission, the State voluntarily dismissed the juvenile's remaining charges, which included conspiracy to commit robbery with a dangerous weapon, breaking and entering, possession of a weapon on educational property, communicating threats, larceny of a motor vehicle, and possession of a stolen motor vehicle. In response to the trial judge's inquiries, the juvenile indicated that he understood the charges, accepted the possible consequences, and stipulated to the factual basis for the admission summarized by the State.
The State asserted that its evidence would show that the juvenile and three friends entered a Quik Shop and robbed the owner. The young men were armed with two shotguns, although there was a dispute about who carried the weapons. The four young men left the scene in the juvenile's mother's car. Officers responding to a report of an armed robbery apprehended the juvenile and his friends.
The trial judge adjudicated the juvenile delinquent based on his admission to robbery with a dangerous weapon, and requested recommendations for disposition. The juvenile court counselor and the juvenile's attorney asked the court to continue disposition, since they needed time to gather more information for the court's consideration. The trial judge then stated that it was typically his "policy" to sentence juveniles who committed armed robbery to training school even when it was the juvenile's first offense. The trial judge then asked what information the parties thought they could obtain that might convince him that the juvenile should not be sent to a youth development center. The juvenile court counselor and the juvenile's attorney advised the judge that they needed to consider the availability of appropriate services to meet the juvenile's mental health issues.
The trial judge then heard from the juvenile's mother regarding why she felt that commitment to a youth development center was the best disposition. She expressed concern about her ability to control the juvenile and stated that she believed the juvenile would not comply with the requirements of house arrest, but rather would manipulate the situation as he had in the past. She informed the trial judge of mental health treatment that the juvenile had received in the past.
The trial judge ultimately granted the request to continue disposition until 23 April 2007 in order to allow the juvenile court counselor and the juvenile's attorney to obtain all available information about the juvenile for consideration during disposition. The judge also ordered the juvenile's mother to provide appropriate releases so that information could be gathered from other states and agencies involved with the juvenile. On 23 April 2007, the juvenile requested and the trial judge, over the objections of the State and the juvenile court counselor, granted a second continuance so that the juvenile's attorney would have sufficient time to review the predisposition report.
At the 30 April 2007 disposition hearing, the trial judge heard from the State, the juvenile court counselor, and the juvenile's attorney. The juvenile court counselor and the State recommended that the juvenile be committed to a youth development center. The State informed the trial judge of the impact on the victim, noted problems the juvenile's mother had controlling him, and referenced other misconduct engaged in by the juvenile. The juvenile's attorney challenged some of the information reported by the State and reported that the juvenile had experienced problems in some of his foster care placements and had spent two years in the Psychiatric Institute of Washington and two years in a mental health treatment program in Georgia. The juvenile's attorney noted that the diagnostic assessment in the predisposition report concluded that the juvenile needed a residential placement in a locked facility and should have a medication evaluation and follow-up. Based on those recommendations, the juvenile's counsel requested that the juvenile be committed to a Level 4 treatment facility.
The trial judge signed a worksheet, indicating that the juvenile had committed a Class D felony that was considered a violent offense. The worksheet stated that the juvenile's prior delinquency history was low, with the result that the juvenile could receive either a Level 2 or a Level 3 disposition. Before imposing his disposition, the trial judge stated: [T]heroretically [sic] we would be starting at . . . square one with respect to entering sanctions and [there] are other dispositional alternatives here. However, in your case you know you have a long history of being committed to what would be equivalent here to [] level four facilities which are sort of the last facilities that we use before we send someone to training school. And apparently those were not effective in changing your behaviors. Some of your behaviors but not all of them apparently.
The second thing is that rightly or wrongly some of us judges have taken a very, very no-nonsense approach to armed robbery, and at least me, I like it to be known to all the kids out there that this is one of the most serious crimes you can commit because it's like you said you would try to get out and try to repair some of the harm you've done, and if that gentleman had come in today, he would try to describe for you the fact that the damage you have done to him may be irreputable [sic] to his psychology or his mind  in his mind, he's going to be living in fear and be scared mentally for the rest of his life because of what happened here. And I know you young men don't understand the consequences of this. You just think about going in and getting some money and leaving. That's not all that happens when you do that. You just don't take the person's money. It's not a monetary thing. This has psychological effects and it's dangerous. Either you could get shot or he could get shot and someone ends up dead in one of these things. So I, you know, basically have decided to use the maximum dispositional alternative here or most restricted dispositonal alternative with respect to this particular crime.
The trial judge then imposed a Level 3 disposition of indefinite commitment to a youth development center with the written order stating it was based on the violent nature of the offense. The juvenile timely appealed to this Court.

Discussion
The juvenile first argues that the trial judge erred by not exercising his discretion in determining the appropriate disposition after consideration of the factors set out in N.C. Gen. Stat. § 7B-2501(c). Upon an adjudication of delinquency, the trial court must determine the juvenile's appropriate dispositional level  levels 1, 2, or 3  depending on the juvenile's delinquency history and the type of offense committed. N.C. Gen. Stat. § 7B-2508 (2007). In this case, the juvenile was found delinquent for an offense classified as violent, N.C. Gen. Stat. § 7B-2508(a), and had a "low" delinquency history level, N.C. Gen. Stat. § 7B-2507 (2007). Under N.C. Gen. Stat. § 7B-2508(f), the trial court was, therefore, authorized to impose either a Level 2 or a Level 3 disposition. See N.C. Gen. Stat. § 7B-2508(f). Level 2 is an intermediate disposition, primarily community based, while Level 3 involves commitment to the Department of Juvenile Justice. N.C. Gen. Stat. § 7B-2508(d), (e).
Our legislature has further specified what a district court must do in selecting the appropriate disposition:
In choosing among statutorily permissible dispositions, the court shall select the most appropriate disposition both in terms of kind and duration for the delinquent juvenile. Within the guidelines set forth in G.S. 7B-2508, the court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile, based upon:
(1) The seriousness of the offense;
(2) The need to hold the juvenile accountable;
(3) The importance of protecting the public safety;
(4) The degree of culpability indicated by the circumstances of the particular case; and
(5) The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.
N.C. Gen. Stat. § 7B-2501(c). When the statute provides the district court with a choice between dispositional levels, we review that choice for abuse of discretion. In re Robinson, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002). We may not alter that choice unless "'the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.'" Id. (quoting Chicora Country Club, Inc. v. Town of Erwin, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), disc. review denied, 347 N.C. 670, 500 S.E.2d 84 (1998)).
The juvenile contends that the trial judge did not exercise his discretion after considering the individual facts of this case, but instead simply applied the judge's general "policy" of requiring commitment for armed robberies. We disagree with the juvenile's reading of the record. The trial judge did not automatically order commitment, but rather allowed two continuances for the gathering of information and preparation for arguing the disposition. He specifically invited the presentation of evidence and argument that would suggest the appropriateness of a level 2 disposition despite the seriousness of the offense.
As the trial judge's remarks indicate, his position as to armed robberies related to the first three factors set out in N.C.Gen. Stat. § 7B-2501(c), regarding the seriousness of the offense, the need to hold the juvenile accountable, and public safety. The trial judge did not, however, limit his consideration to those three factors, but also was provided with input regarding the final two factors. The trial judge received evidence regarding the juvenile's mistreatment while in foster care, the prior mental health treatment received by the juvenile, and the degree of success of that treatment. The juvenile's mother also expressed her concern to the judge about her inability to control the juvenile and the likelihood that he would disregard any order short of commitment. With respect to the juvenile's culpability, although there was a dispute about who actually held the guns, the juvenile admitted his involvement in the armed robbery and that he had supplied the car. His mother informed the judge that she had seen the juvenile with the car prior to the robbery and unsuccessfully tried to bring him home.
While the transcript indicates that the trial judge takes armed robbery very seriously and places great weight on the seriousness of the crime, he also, in this case, considered the specific facts relating to the juvenile and this armed robbery. He then exercised his discretion in rejecting the juvenile's request that he be confined in a level 4 treatment facility based on his assessment that such an approach had already been unsuccessfully used with this juvenile. Thus, the record establishes that the trial judge exercised his discretion based on the specific facts of this case and the considerations set out in N.C. Gen. Stat. § 7B-2501(c). See In re Z.A.K., ___ N.C. App. ___, ___, 657 S.E.2d 894, 898-99 (2008) ("We also find no merit in defendant's claim that the trial court failed to exercise dispositional discretion. Although defendant notes two instances in which the trial judge indicated a general policy preference on his part for level II dispositions for juveniles who commit felonies, the extended discussion in the transcripts reveals that the judge considered a variety of factors before `design[ing] an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State.'" (quoting N.C. Gen. Stat. § 7B-2500 (2005)).
The juvenile, however, urges that the trial judge erred under In re Khork, 71 N.C. App. 151, 156, 321 S.E.2d 487, 490 (1984), by committing him to a youth development center based on the "perceived seriousness of the offense alone." In Khork, no evidence was submitted at the dispositional hearing either as to the appropriateness of commitment to a juvenile facility or as to the inappropriateness of a community-based disposition. Id. at 155, 321 S.E.2d at 490. This Court held based on that record: "Where no evidence of the appropriateness of incarceration is presented in the dispositional hearing, [the juvenile] may not be committed based upon the perceived seriousness of the offense alone. Such actions would otherwise render the dispositional hearing a useless formality. . . ." Id. at 155-56, 321 S.E.2d at 490.
This case does not present the situation occurring inKhork. The trial court here continued the dispositional hearing twice to ensure a full presentation and received evidence or heard argument on all the required factors. In contrast to Khork, the dispositional hearing was not a "useless formality," id., and the trial court's ultimate decision to require commitment is supported by the record.
The juvenile next argues that the trial court's order contains insufficient findings of fact. The juvenile notes that the order committing him listed only the "violent nature of offense" in support of its decision to order a level 3 disposition. The juvenile contends that this single finding does not constitute the "appropriate findings of fact and conclusions of law" required by N.C. Gen. Stat. § 7B-2512 (2007).
N.C. Gen. Stat. § 7B-2512 provides: "The dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law. The court shall state with particularity, both orally and in the written order of disposition, the precise terms of the disposition including the kind, duration, and the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested." The juvenile contends that the trial court's single reference to the seriousness of the offense does not constitute "appropriate" findings of fact because the trial court was required to make findings of fact on each of the factors set out in N.C. Gen. Stat. § 7B-2501(c).
Nothing in N.C. Gen. Stat. § 7B-2501 or N.C. Gen. Stat. § 7B-2512 mandates a specific finding of fact as to the considerations set out in § 7B-2501(c). N.C. Gen. Stat. § 7B-2501(c) simply requires that the choice of disposition be "based upon" the specified factors. In other statutory provisions relating to the dispositional order, however, the legislature has indicated when specific findings of fact on an issue are required. See, e.g, N.C. Gen. Stat. § 7B-2506(1)(c) (2007) ("An order placing a juvenile in the custody or placement responsibility of a county department of social services shall contain a finding that the juvenile's continuation in the juvenile's own home would be contrary to the juvenile's best interest."); N.C. Gen. Stat. § 7B-2506(2) (providing that trial court may excuse juvenile from compliance with compulsory school attendance law "when the court finds that suitable alternative plans can be arranged by the family through other community resources" for one of three specified plans); N.C. Gen. Stat. § 7B-2506(6) (authorizing court to order community service, but requiring that order "specify[] the nature of the work and the number of hours required"); N.C. Gen. Stat. § 7B-2506(19) (authorizing court to suspend imposition of more severe disposition "with the provision that the juvenile meet certain conditions agreed to by the juvenile and specified in the dispositional order"). See also N.C. Gen. Stat. §§ 7B-507(a), -905(a) (2007) (mandating that dispositional orders in abuse, neglect, and dependency cases "shall contain appropriate findings of fact and conclusions of law" and comply with § 7B-507, which in turn specifies that order "shall contain" certain findings). Since the legislature has not included language suggesting that specific findings are required regarding the factors in § 7B-2501, we decline to impose such a requirement.
Instead, we construe "appropriate" as requiring sufficient findings of fact to explain the trial court's reasoning in imposing the chosen disposition. Cf. Roberts v. Madison County Realtors Ass'n, 344 N.C. 394, 401, 474 S.E.2d 783, 788 (1996) (holding that when trial court makes decision within its discretion, "the court should make appropriate findings of fact and conclusions of law, sufficient to allow appellate review for abuse of discretion"). In this case, the trial court's order indicates that, after considering the evidence, it concluded that the violent nature of the offense warranted commitment. While we acknowledge that the order is indeed sketchy, we cannot conclude that it fails to comply with N.C. Gen. Stat. § 7B-2512.
The juvenile contends that In re Ferrell, 162 N.C. App. 175, 589 S.E.2d 894 (2004), requires a contrary conclusion. In Ferrell, this Court did not hold that findings of fact are required as to the factors set out in N.C. Gen. Stat. § 7B-2501(c), but rather reversed the trial court because the dispositional order did not contain any findings justifying the court's determination that custody of the juvenile should be transferred from the mother to the father. Ferrell, 162 N.C. App. at 177, 589 S.E.2d at 895. This Court further concluded that the record did not contain sufficient evidence to support this transfer. Id.
In contrast, in this case, the trial court specifically explained why it was ordering an indefinite commitment, and the record contains evidence to support that determination. We note, however, that the findings of fact in the dispositional order appear to contain a clerical error. In handwriting, the order states that the juvenile's delinquency history points are "high," without any specification of the total points, and the juvenile's delinquency history level is "high." The Worksheet to Determine Juvenile Disposition Level signed by the trial judge, however, states that the juvenile has zero delinquency history points and that his delinquency history level is "low."
Based on the transcript and the Worksheet, it is apparent that the trial judge understood, at the time he rendered his disposition, that the juvenile had no delinquency history points and thus had a "low" delinquency history level. When that disposition was recorded in the formal written order, an error was made. "Clerical error" is defined as "'[a]n error resulting from a minor mistake or inadvertence, [especially] in writing or copying something on the record, and not from judicial reasoning or determination.'" State v. Jarman, 140 N.C. App. 198, 202, 535 S.E.2d 875, 878 (2000) (quoting Black's Law Dictionary 563 (7th ed. 1999)).
A court "has the inherent power to make its records speak the truth and, to that end, to amend its records to correct clerical mistakes or supply defects or omissions therein." State v. Davis, 123 N.C. App. 240, 242-43, 472 S.E.2d 392, 393 (1996). We, therefore, remand for the purpose of correcting the dispositional order so that it accurately reflects the juvenile's delinquency history points and the juvenile's delinquency history level. We caution the trial courts to give equal care to the written orders as they do to their decision-making process so that the orders properly set out the basis for the court's ruling and accurately reflect the facts leading up to that ruling.
Affirmed in part; remanded in part.
Judges TYSON and STROUD concur.
Report per Rule 30(e).