NO. COA13-899

NORTH CAROLINA COURT OF APPEALS

Filed:  18 February 2014

IN THE MATTER OF:

   P.Q.M.                                     Gaston County
                                                                     No. 11 JB 146

Appeal by juvenile from order entered 7 March 2013 by Judge Ralph C. Gingles in Gaston County District Court.  Heard in the Court of Appeals 8 January 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Gerald K. Robbins, for the State.*
>
> *James N. Freeman, Jr., for juvenile-appellant.*

CALABRIA, Judge.

Juvenile P.Q.M. ("Paul")[1] appeals from a disposition order committing him to a youth development center ("YDC") of the North Carolina Division of Juvenile Justice for a minimum of six months and a maximum term not to exceed his eighteenth birthday.  We affirm.

## I. Background

---

[1] We use this pseudonym to protect the juvenile's privacy and for ease of reading.

Paul was adjudicated delinquent on 29 November 2012 in Cleveland County for robbery with a dangerous weapon ("RWDW"), a Class D felony pursuant to N.C. Gen. Stat. § 14-87 (2011). On 5 January 2012, Paul was adjudicated delinquent for, *inter alia*, communicating threats pursuant to N.C. Gen. Stat. § 14-277.1 (2011), a Class 1 misdemeanor. On 3 December 2012, Paul was again adjudicated delinquent in Gaston County for, *inter alia*, larceny of a firearm, a Class H felony pursuant to N.C. Gen. Stat. § 14-72 (2011). The Cleveland County adjudication for RWDW was transferred to Gaston County and all of Paul's adjudications were calendared for disposition in Gaston County.

The disposition hearing on 4 March 2013 in Gaston County District Court included all three of Paul's adjudications. The trial court found three delinquency history points, a high delinquency level, that Paul had previously been adjudicated delinquent for two or more felony offenses, and that he had previously been committed to a YDC. Therefore, the trial court entered a Level 3 disposition. On 7 March 2013, the trial court entered an amended Level 3 disposition ("the amended order"). In both the original and the amended order, the trial court found that Paul's most serious offense was RWDW. The amended order indicated that Paul had been adjudicated for a violent or serious

offense pursuant to N.C. Gen. Stat. § 7B-2508 (2011). In the amended order, the trial court again found, pursuant to N.C. Gen. Stat. § 7B-2507(a) (2011), Paul had three delinquency history points: two for the larceny of a firearm offense, and one for the communicating threats offense. The trial court imposed a Level 3 disposition. However, the amended order added Paul's adjudication for communicating threats on 5 January 2012 and deleted Paul's 3 December 2012 Breaking and Entering ("B & E") offense.[2]

The trial court amended Paul's delinquency history level and found that Paul had a medium delinquency level rather than a high delinquency level. The trial court ordered Paul committed to a YDC for a minimum of six months and a maximum term not to exceed his eighteenth birthday. Paul appeals only the amended order. Paul's adjudications are undisputed.

## II. Standard of Review

On appeal, this Court "will not disturb a trial court's ruling regarding a juvenile's disposition absent an abuse of discretion,

---

[2] Paul's B & E and larceny of a firearm offenses are both Class H felonies adjudicated in the same session of juvenile court, and pursuant to N.C. Gen. Stat. § 7B-2507(d) (2011), only one of these offenses could be included in the disposition. ("For purposes of determining the delinquency history level, if a juvenile is adjudicated delinquent for more than one offense in a single session of district court, only the adjudication for the offense with the highest point total is used.")

which occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re J.B.*, 172 N.C. App. 747, 751, 616 S.E.2d 385, 387 (2005) (citation and quotation marks omitted). "Although the trial court has discretion under N.C. Gen. Stat. § 7B-2506 [] in determining the proper disposition for a delinquent juvenile, the trial court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile[.]" *In re Ferrell*, 162 N.C. App. 175, 176, 589 S.E.2d 894, 895 (2004) (citations omitted). Accordingly, the court "shall select the most appropriate disposition both in terms of kind and duration for the delinquent juvenile." N.C. Gen. Stat. § 7B-2501(c) (2011).

### III. Consolidation of Offenses

Paul argues that the trial court erroneously calculated his prior history level and erred in entering a Level 3 rather than a Level 2 disposition. In addition to the improper calculation, Paul contends the trial court failed to properly consolidate his offenses and also failed to consider his extraordinary needs that warranted a Level 2 rather than a Level 3 disposition. We disagree.

After a juvenile is adjudicated delinquent, the level of punishment depends on "the juvenile's delinquency history and the

type of offense committed." *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002). The court determines the delinquency history level "by calculating the sum of the points assigned to each of the juvenile's prior adjudications and to the juvenile's probation status, if any[.]" N.C. Gen. Stat. § 7B-2507(a) (2011). "If a juvenile is adjudicated of more than one offense during a session of juvenile court, the court shall consolidate the offenses . . . and impose a single disposition . . . . The disposition shall be specified for the class of offense and delinquency history level of the most serious offense." N.C. Gen. Stat. § 7B-2508(h) (2011). "'Session' is not defined within the definitions section of the Juvenile Code, but is defined in case law as that which designates the typical one-week assignment to a particular location during the term." *In re D.R.H.*, 194 N.C. App. 166, 169, 668 S.E.2d 919, 921 (2008) (citation and quotation marks omitted).

In the instant case, Paul was adjudicated delinquent on three different days in three different calendar weeks in three different sessions. Paul was first adjudicated on 5 January 2012 for communicating threats pursuant to N.C. Gen. Stat. § 14-277.1 (2011), a Class 1 misdemeanor. On Thursday, 29 November 2012, he was adjudicated delinquent for RWDW, a Class D felony pursuant to

N.C. Gen. Stat. § 14-87 (2011), in Cleveland County, which is in Judicial District 27B. On Monday, 3 December 2012, Paul was adjudicated delinquent for larceny of a firearm, a Class H felony pursuant to N.C. Gen. Stat. § 14-72 (2011), in Gaston County, which is in Judicial District 27A.

The trial court clearly transferred Paul's RWDW adjudication from Cleveland County to Gaston County for disposition. The Cleveland County adjudication order states that "[t]he legal file and disposition are to be transferred to Gaston County." Merely transferring an adjudication to another county for disposition does not require the court to consolidate offenses that were adjudicated in separate sessions of juvenile court in a disposition. In addition, the order on its face did not require or order the Cleveland County adjudication consolidated with the Gaston County adjudication for disposition. Therefore, the trial court was not required to consolidate the offenses for disposition, and the consolidation requirement of N.C. Gen. Stat. § 7B-2508(h) does not apply.

## IV. Prior Adjudication

Paul further contends that since his adjudication for larceny of a firearm was on 3 December 2012 and for RWDW was on 29 November 2012, the trial court improperly considered the larceny of a

firearm offense as a prior adjudication. Since the Juvenile Code does not provide a definition of "prior adjudication," we turn to criminal law in order to resolve this procedural issue. This Court has compared and analogized criminal statutes with juvenile statutes to resolve procedural issues. *See In re D.R.H.*, 194 N.C. App. at 170, 668 S.E.2d at 921 (analogizing proof of prior juvenile adjudications with proof of prior criminal convictions); *see In re Griffin*, 162 N.C. App. 487, 493, 592 S.E.2d 12, 16 (2004) (analogizing juvenile petitions with felony indictments). "A person has a prior conviction when, on the date a criminal judgment is entered, the person being sentenced has been previously convicted of a crime[.]" N.C. Gen. Stat. § 15A-1340.11(7) (2011). *See also* N.C. Gen. Stat. § 15A-1331(b) (2011) ("For the purpose of imposing sentence, a person has been convicted when he has been adjudged guilty or has entered a plea of guilty or no contest.").

In the instant case, Paul was adjudicated for RWDW on Thursday, 29 November 2012. The following week, on Monday, 3 December 2012, in a different session of court from the prior week, Paul was adjudicated for larceny of a firearm. Although the dispositional hearing for Paul's offenses was not held until 4 March 2013, the adjudication, which is similar to a conviction, of Paul's larceny of a firearm offense occurred prior to the 4 March

2013 disposition hearing and entry of the disposition. Therefore, the trial court properly considered Paul's larceny of a firearm offense as a "prior adjudication" pursuant to N.C. Gen. Stat. § 7B-2507(a) (2011).

## V. Level 3 Disposition

Paul also argues the trial court erred in ordering a Level 3 disposition when evidence supporting extraordinary needs warranted a Level 2 disposition. We disagree.

"Based upon the delinquency history level determined pursuant to G.S. § 7B-2507, and the offense classification for the current offense, N.C. Gen. Stat. § 7B-2508 then dictates the dispositional limits available." *In re Allison*, 143 N.C. App. 586, 597, 547 S.E.2d 169, 176 (2001). When the dispositional chart prescribes a Level 3 disposition, the trial court shall commit the adjudicated juvenile to a YDC. N.C. Gen. Stat. § 7B-2508(e) (2011). "However, a court may impose a Level 2 disposition rather than a Level 3 disposition if the court submits written findings on the record that substantiate extraordinary needs on the part of the offending juvenile." *Id.* "[C]hoosing between two appropriate dispositional levels is within the trial court's discretion. Absent an abuse of discretion, we will not disturb the trial court's choice. An abuse of discretion occurs when the trial court's ruling is so arbitrary

that it could not have been the result of a reasoned decision."

*In re Robinson*, 151 N.C. App. at 737, 567 S.E.2d at 229 (citation and quotation marks omitted).  In choosing a disposition,

> the court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile, based upon:
>
> (1)  The seriousness of the offense;
>
> (2)  The need to hold the juvenile accountable;
>
> (3)  The importance of protecting the public safety;
>
> (4) The degree of culpability indicated by the circumstances of the particular case; and
>
> (5)  The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.

N.C. Gen. Stat. § 7B-2501(c) (2011).  This Court has previously upheld a Level 3 disposition for a juvenile who had no prior delinquency history, had a low risk of re-offending, and a low needs assessment.  *In re N.B.*, 167 N.C. App. 305, 310-11, 605 S.E.2d 488, 491-92 (2004).  The juvenile in *N.B.* had been adjudicated delinquent for assault with a deadly weapon inflicting serious injury, and the trial court had the authority to impose either a Level 2 or Level 3 disposition pursuant to N.C. Gen. Stat. § 7B-2508(f).  *Id.* at 311, 605 S.E.2d at 492.  This Court held

that the juvenile failed to show the trial court's decision to impose a Level 3 disposition amounted to an abuse of discretion. *Id.*

In the instant case, since Paul was previously adjudicated delinquent, the trial court determined Paul's delinquency history level to be medium. With a violent offense and a medium delinquency level, a Level 3 disposition is required pursuant to N.C. Gen. Stat. § 7B-2508(f) (2011). However, the court had the discretion to impose either a Level 2 disposition with written findings of Paul's extraordinary needs or a Level 3 disposition. N.C. Gen. Stat. § 7B-2508(e) (2011).

The trial court heard evidence from several witnesses involved in Paul's case to determine which level of disposition to impose. Specifically, the court heard evidence from Juvenile Court Counselor Stephania Sarvis ("Sarvis"); Dr. Stephen Strezlecki ("Dr. Strezlecki"), a psychologist working with juveniles involved with the court system; family therapist Logan Cohen ("Cohen"); and mental health professional Rory Barrington ("Barrington"). The court also considered and incorporated by reference a predisposition report, a risk assessment, and a needs assessment. Paul had been evaluated in the assessments as presenting a medium risk and having medium needs.

At the disposition hearing, Sarvis testified that Paul was suspended from the alternative school he had been attending when the alternative school was notified of the pending RWDW offense. Sarvis recommended a Level 3 disposition and commitment to a YDC where Paul could resume his schooling immediately, receive individual, group, and family counseling, and remain on any currently prescribed medications. According to Sarvis, the counseling available at the YDC enables juvenile offenders to "understand the seriousness of their offense [sic] and they can get a perspective from the victim's point of view[.]" She also indicated that placement with a YDC would provide Paul with his treatment needs, be rehabilitative, and also provide some measure of protection to public safety.

Dr. Strezlecki performed a psychological evaluation on Paul on 9 January 2013 as part of Paul's involvement in the juvenile court system. Dr. Strezlecki testified that, based upon "a combination of reviewing [Paul's] history in terms of involvement with the juvenile court system, as well as behavioral difficulties at school, and also looking at his more recent history" of detention and house arrest, Paul needed a high level of structure. Dr. Strezlecki specifically recommended to the court that Paul should have "a highly structured supervised residential

placement," because it did not appear that Paul could receive the level of structure he needed at home.

Cohen and Barrington both testified on Paul's behalf regarding the therapeutic services they provided through Support, Incorporated ("Support"). Cohen had been providing Paul with in-home therapy since November 2012. At the time of the hearing, Cohen was providing Paul with therapy for two hours per day, four days a week. Barrington testified that he and Paul had been participating in volunteer work for a local animal shelter as part of Paul's therapy. Cohen and Barrington stressed the importance of Paul's awareness of his behavior and acknowledging accountability for his actions as part of his treatment plan, and both testified to Paul's positive progress in the Support therapy program. However, while Cohen and Barrington both indicated Paul was making positive progress in the Support program, the risk and needs assessments in the record indicated that Paul presented a medium risk and had medium needs.

The court heard and considered the evidence of all the witnesses, as well as the needs and risk assessments. There is nothing in the record to indicate that the court's failure to find that Paul had extraordinary needs was so arbitrary that it could not have been the result of a reasoned decision. Just as the

juvenile in *N.B.* with a low risk and low needs assessment failed to show that the trial court abused its discretion by imposing a Level 3 disposition, here Paul also has failed to show that the trial court's decision to impose a Level 3 disposition amounted to an abuse of discretion. *In re N.B.* at 311, 605 S.E.2d at 492.

## VI. Conclusion

The trial court heard and considered the evidence presented at the disposition hearing and properly selected a Level 3 disposition based on the seriousness of the offense; the need to hold Paul accountable; the importance of public safety; Paul's degree of culpability; and Paul's rehabilitative and treatment needs as indicated by the risk and needs assessments. N.C. Gen. Stat. § 7B-2501(c) (2011). In addition, the trial court selected the Level 3 disposition after considering Paul's rehabilitation and treatment needs and decided the disposition would meet Paul's best interests. *Id.* Therefore, the trial court made a reasoned decision and did not abuse its discretion in imposing the Level 3 disposition. We affirm the trial court's order committing Paul to a YDC for a minimum of six months and a maximum term not to exceed his eighteenth birthday.

Affirmed.

Judges BRYANT and GEER concur.