IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-139

No. COA20-164

Filed 20 April 2021

Mecklenburg County, 15 JB 511

IN THE MATTER OF: W.M.C.M.

Appeal by juvenile from order entered 1 April 2019 by Judge David Strickland in Mecklenburg County District Court. Heard in the Court of Appeals 9 March 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Stephanie A. Brennan, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for juvenile-appellant.*

TYSON, Judge.

¶ 1 The juvenile ("Walter") appeals from an order, which imposed a Level 3 disposition and committed Walter to a youth development center ("YDC"). *See* N.C. R. App. P. 42(b)(4) (permitting the use of pseudonyms to protect the identity of the juvenile). We affirm.

## I. Background

¶ 2 Walter was 15 years old at the time of this dispositional hearing. He was diagnosed with oppositional defiant disorder, conduct disorder, ADHD, cannabis use disorder, and tobacco-related disorder in August 2018.

Walter broke into a storage unit on 2 August 2018. In September 2018, Walter was placed into custody of the Mecklenburg County Department of Social Services ("DSS") after a court determined his mother was unable to provide proper care and discipline over him. While in DSS custody, Walter broke into two vehicles on 1 October 2018.

DSS placed Walter into a group home in October 2018, from which he fled. He was located, taken into custody, and placed into secure custody in a juvenile detention facility.

Several additional criminal charges and probation violations were pending against Walter at the time he appeared with appointed counsel at the December 2018 adjudication hearing.

## A. Adjudication

Petitions alleged Walter had committed two counts of breaking and entering into a motor vehicle, and one count of felony breaking and entering on 31 December 2018. As part of an agreement with the State, Walter entered an admission to the breaking and entering petition and one of the breaking and entering a motor vehicle petitions. The State agreed to dismiss several additional pending charges, voluntarily dismissed a motion for review based on a probation violation and declined to seek additional petitions for Walter's conduct and actions.

The court informed Walter of his constitutional and statutory rights. Based

upon Walter's admissions, and after the State had provided a factual basis for the petitions, the court stated it was "going to adjudicate [Walter] delinquent as to the charge of felony breaking and entering and felony breaking and entering of a motor vehicle." The trial court recorded these findings and conclusions on the Arraignment Order.

## B. Disposition

The dispositional hearing was calendared for 23 January 2019. Walter fled when he arrived at the courthouse. As a result of Walter's flight, the hearing was rescheduled for 29 January 2019. The juvenile court counselor recommended committing Walter to a YDC. After hearing arguments, the court took the matter under advisement and continued the case to February 2019.

The court held an emergency hearing at the request of DSS on 14 February 2019. An attorney for DSS reported an incident where Walter punched a concrete wall. DSS' attorney reported Walter was "very anxious" about the outcome of his case. A social worker for DSS noted that Walter had also been banging his head against a wall, was violent, and required restraint several times before the hearing. The court granted DSS' request for medication.

The case was heard again on 25 February 2019. The court again continued the case due to an "overwhelming amount of information" regarding Walter's actions and mental health.

At the dispositional hearing on 26 March 2019, the juvenile court counselor reported Walter had again fled from his placement. The State asked the court to commit Walter to a YDC. The court agreed and issued its Disposition and Commitment order detailing Walter's delinquency, history of criminal acts, and violent and aggressive behaviors on 1 April 2019. Walter timely appealed.

## II.     Jurisdiction

Appellate jurisdiction exists pursuant to N.C. Gen. Stat. §§ 7B-2602 and 7B-2604 (2019).

## III.     Issues

Walter argues the trial court (1) erred by adjudicating him delinquent and failing to tell him that, by entering an admission, he would waive his right to confrontation; (2) failed to enter a sufficient adjudication order; and, (3) abused its discretion by imposing the highest possible disposition.

## IV.     Standard of Review

An alleged violation of a statutory mandate is a question of law and is reviewed *de novo*. *In re A.M.*, 220 N.C. App. 136, 137, 724 S.E.2d 651, 653 (2012).

## V.     Analysis

### A. Adjudication Hearing

#### 1. Statutory Requirements

A trial court "may accept an admission from a juvenile only after determining

that the admission is the product of an informed choice." N.C. Gen. Stat. § 7B-2407(b)

(2019). To ensure an admission is informed, the trial court must first, before

accepting an admission, address the juvenile personally and:

> (1) Inform[] the juvenile that the juvenile has a right to
> remain silent and that any statement the juvenile makes
> may be used against the juvenile;
>
> (2) Determin[e] that the juvenile understands the nature
> of the charge;
>
> (3) Inform[] the juvenile that the juvenile has a right to
> deny the allegations;
>
> (4) Inform[] the juvenile that by the juvenile's admissions
> the juvenile waives the juvenile's right to be confronted by
> the witnesses against the juvenile;
>
> (5) Determin[e] that the juvenile is satisfied with the
> juvenile's representation; and
>
> (6) Inform[] the juvenile of the most restrictive disposition
> on the charge.

N.C. Gen. Stat. § 7B-2407(a) (2019). The trial court's failure to address these

inquiries to the prejudice of the juvenile requires reversal of the adjudication. *In re

A.W.*, 182 N.C. App. 159, 161, 641 S.E.2d 354, 356 (2007).

## 2. Walter's Delinquency Admissions

The following colloquy occurred between the trial court and Walter during the

delinquency adjudication hearing:

> THE COURT: Do you understand that in the hearing you

have the right to not say anything about your charge, or that any statement you make may be used as evidence against you?

JUVENILE: Yes, sir.

 . . . .

THE COURT: And have the terms been explained to you by your lawyer?

JUVENILE: Yes, sir.

THE COURT: And do you understand what the charges are?

JUVENILE: Yes, sir.

THE COURT: Do you understand every part of each charge?

JUVENILE: Yes, sir.

THE COURT:  Have you and your lawyer discussed the possible reasons why you would not be responsible for the charge?

JUVENILE: Yes, sir.

THE COURT: And how -- are you satisfied with [your counsel's] help in your case?

JUVENILE: Yes, sir.

THE COURT: You understand that you have the right to deny the charges?

JUVENILE: Yes, sir.

THE COURT: You understand that you have the right to have this case heard before a judge in juvenile court?

JUVENILE: Yes, sir.

THE COURT: *You also understand you have the right to ask witnesses questions during a hearing?* [Emphasis supplied].

JUVENILE: Yes, sir.

THE COURT: Do you understand that you're admitting to the following charges: Felony breaking and entering, which is a Class H felony with a date of offense of August the 2nd, 2018; and felony breaking and entering of a motor vehicle, a Class I felony, with the date of offense of October the 1st, 2018?

JUVENILE: Yes, sir.

THE COURT: Do you understand the most serious disposition, given your history, is as follows: A Level 3 disposition, which could be the commitment to the Juvenile Justice Section of the Division of Adult Corrections and Juvenile Justice for placement in the Youth Development Center for a minimum of six months and an absolute maximum until your 18th birthday?

JUVENILE: Yes, sir.

THE COURT: Do you now personally admit the charges?

JUVENILE: Yes, sir.

THE COURT: Did you in fact commit the acts charged in the petition? Did you do it?

JUVENILE: Yes, sir.

Walter concedes the court provided all but the fourth warning set forth in the statute. N.C. Gen. Stat. § 7B-2407(a)(4) ("[i]nforming the juvenile that by the juvenile's admissions the juvenile waives the juvenile's right to be confronted by the witnesses against the juvenile").

Walter acknowledges the court told him he had the right to "ask witnesses questions during a hearing." However, Walter asserts the trial court erred by failing to specifically tell him he would waive the right to confront witnesses by entering an admission.

Walter relies on the case of *In re A.W.*, 182 N.C. App. at 161-62, 641 S.E.2d at 356-57. In that case, this Court recognized the trial court had "failed to strictly comply with N.C. Gen. Stat. § 7B–2407." *Id.* This Court reversed where the trial court failed to orally inform the juvenile of his rights under the first and third prongs of the statute. *Id.* This Court held "increased care must be taken to ensure complete understanding by juveniles regarding the consequences of admitting their guilt. At a very minimum, this requires asking a juvenile each of the six specifically mandated questions listed in N.C.G.S. § 7B–2407(a)." *Id.* at 162, 64 S.E.2d at 356. (emphasis omitted) (citations omitted).

Walter argues his adjudication must be reversed because the trial court did not follow the exact language of N.C. Gen. Stat. § 7B-2407. This Court dealt with a similar issue in the case of *In re C.L.*, 217 N.C. App. 109, 719 S.E.2d 132 (2011).

¶ 21        The issue before and reviewed by this Court in *C.L.* was "whether the trial court's failure to make the inquiry specified in N.C. Gen. Stat. § 15A–1022(d) either affected [the] Juvenile's decision to plead or undermined the plea's validity." *Id.* at 115, 719 S.E.2d at 136 (alterations and citations omitted). In *C.L.*, the trial court questioned the juvenile before his admission using the colloquy from Form AOC-J-410, entitled "Transcript of Admission by Juvenile." *Id.* at 110, 719 S.E.2d at 133. On appeal, the juvenile asserted "the trial court erred by failing to determine whether his *Alford* admission represented his free and informed choice." *Id.* at 113, 719 S.E.2d at 134.

¶ 22        This Court held that while the trial court did not strictly comply with N.C. Gen. Stat. § 15A–1022(d), the juvenile "had been informed of the consequences of his [] admission and fully understood that he would be treated as subject to the trial court's dispositional authority after entering his admission." *Id.* at 115, 719 S.E.2d at 136.

> [T]he record developed in the trial court indicates that Juvenile was adequately apprised of the consequences of making his *Alford* admission, understood what would happen if he persisted in making such an admission, and made an "informed choice" to admit responsibility pursuant to *Alford* instead of asserting the rights that would have been available to him had he gone to hearing.

*Id.* at 116, 719 S.E.2d at 136. (citations omitted).

¶ 23        The facts before us are similar to those in *In re C.L.* Prior to the State offering

factual support of the charges, the trial court asked Walter the questions listed on

Form AOC-J-410 nearly *verbatim*:

> THE COURT: Sir, do you make this admission of your own free will, fully understanding what you are doing?
>
> JUVENILE: Yes, sir.
>
> THE COURT: And do you have any questions about what has just been said to you or anything else connected with your case?
>
> JUVENILE: No, sir.

The trial court also gave a broader explanation to Walter of his confrontation rights than the exact statutory language. The statute does not require the exact statutory language to be used during the colloquy, but rather requires the court to orally and clearly inform the juvenile of his rights, which Walter affirmatively answered. *See* N.C. Gen. Stat. § 7B-2407.

We hold Walter "understood that he could deny the allegations and have a hearing and that, by admitting responsibility, he was foregoing that right." *In re C.L.* 217 N.C. App at 116, 719 S.E.2d at 136.

The trial court relied upon the provided Form AOC-J-410 "Transcript of Admission by Juvenile G.S. 7B-2407." To reverse Walter's admission on these facts would require this Court to find the officially adopted AOC "Transcript of Admission" form is an insufficient guide for the trial courts to use and it fails to comply with the

statute. Walter has failed to show any error, prejudice, or that his confrontation right, or any of his other rights were violated. His arguments are overruled.

### 3. Non-persuasive Authority

¶ 27 Walter argues the trial court failed to enter a sufficient written adjudication order. Walter relies on an unpublished and nonbinding opinion, *In re O.S.R.*, 255 N.C. App. 448, 803 S.E.2d 706, 2017 WL 3864011, \*1 (2017). In this case, this Court remanded the trial court's adjudication of delinquency order wherein the trial court had failed to check box number 3 on the form adjudication order. This Court remanded the order for the trial court to correct the written order to conform with its oral findings. *Id.* at \* 2. The nonbinding conclusion in the opinion of *In re O.S.R.* does not impose a requirement for factual findings in adjudication orders. We dismiss Walter's arguments concerning *In re O.S.R.*

### 4. N.C. Gen. Stat. § 7B-2411

¶ 28 Walter also contends the trial court's order was insufficient because the trial court did not use an AOC form Adjudication Order. Instead, the trial court used an Arraignment Order and the Transcript of Admission by Juvenile Form. No statute or case requires this exact form to be used. *See* N.C. Gen. Stat. § 7B-2411 (2019); *see also In re J.V.J.*, 209 N.C. App. 737, 740, 707 S.E.2d 636, 638 (2011). We overrule Walter's objection to the forms used by the trial court.

¶ 29 Further, Walter argues the trial court's order did not comply with N.C. Gen.

Stat. § 7B-2411 because it did not specifically state that the allegations in the petition had been proven beyond a reasonable doubt. An alleged violation of a statutory mandate is a question of law and reviewed *de novo*. *In re A.M.*, 220 N.C. App. at 137, 724 S.E.2d at 653.

¶ 30 If the allegations in the petition have been proven beyond a reasonable doubt, "the court shall so state in a written order of adjudication, which shall include, but not be limited to, the date of the offense, the misdemeanor or felony classification of the offense, and the date of adjudication." N.C. Gen. Stat. § 7B-2411.

¶ 31 In the case of *In re J.V.J.*, this Court held the trial court's findings were insufficient to support the adjudication of delinquency where the court "fail[ed] to include the requisite findings in its adjudication order" and "[r]ather than addressing the allegations in the petition in the blank area the court . . . indicate[d], through a fragmentary collection of words and numbers, that an offense occurred and [] state[d] that Joseph was 'responsible.'" *In re J.V.J.*, 209 N.C. App. at 740-41, 707 S.E.2d at 638.

¶ 32 This Court specifically held N.C. Gen. Stat. § 7B-2411 "does not require the [trial] court to delineate each element of an offense and state in writing the evidence which satisfies each element." *Id.* The Court further recognized: "section 7B–2411 does not specifically require that an adjudication order contain appropriate findings of fact . . . . Nevertheless, at a minimum, section 7B–2411 requires a court to state

in a written order that the allegations in the petition have been proved [beyond a reasonable doubt].” *Id.* at 740, 707 S.E.2d at 638 (internal citations and quotation marks omitted).

¶ 33      In a later case, *In re K.C.*, 226 N.C. App. 452, 460-61, 742 S.E.2d 239, 245 (2013), this Court held the trial court’s order satisfied the minimal requirements of N.C. Gen. Stat. § 7B–2411. The order provided the date of the offense, that the assault charge was a class 2 misdemeanor, the date of the adjudication, and stated the court had “considered the evidence and adjudicated [the juvenile] delinquent as to the petition’s allegation of simple assault beyond a reasonable doubt.” *Id.*

¶ 34      Here, after Walter’s knowing and affirmative admissions of responsibility to the plea agreement offered by the State, the court made its finding after the prosecutor had provided the factual support and basis for the charges. The court wrote: “BASED UPON THE JUVENILE’S ADMISSION AND THE EVIDENCE PRESENTED BY THE DA, THE COURT FINDS BEYOND A REASONABLE DOUBT THAT THE JUVENILE[] IS ADJUDICATED DELINQUENT.”

¶ 35      Here, as in preceding cases, the trial court’s adjudication order of delinquency met and contained all requirements of N.C. Gen. Stat. § 7B-2411. The order was written, indicated the date of the offenses, the felony classification of the offenses, and the date of adjudication. The trial court’s order contained factual findings including the juvenile’s affirmative admission of responsibility to the charges of

felony breaking and entering and felony breaking and entering of a motor vehicle. In exchange, the State agreed to dismiss multiple other charges and probation violation and not to seek a future petition on his other culpable conduct and actions. The court's order clearly satisfies the statutory requirements. The juvenile's arguments are without merit and dismissed.

### 5. Protection of Juvenile

¶ 36    Finally, Walter argues his case should be remanded to the juvenile court because our court system has a greater duty to protect the rights of juveniles. "Our courts have consistently recognized that the State has a greater duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution." *In re T.E.F.*, 359 N.C. 570, 575, 614 S.E.2d 296, 299 (2005) (emphasis omitted) (citations omitted).

¶ 37    The trial court not only addressed all six prongs in the statute, but broke down the language for the juvenile to better comprehend and respond affirmatively to the questions. Walter was fully informed of the rights he was waiving, and after being clearly informed of his rights, he expressly agreed to take the State's plea offer and admit responsibility for his actions. Walter signed the Form AOC-J-410 agreement after the trial court had explained his rights to him and while represented by counsel. The record affirmatively shows on its face Walter's plea was knowingly and voluntarily entered. *In re Chavis*, 31 N.C. App. at 580–81, 230 S.E.2d at 199–200.

## B. Dispositional Order

### 1. Standard of Review

¶ 38    "The decision to impose a statutorily permissible disposition is vested in the discretion of the juvenile court and will not be disturbed absent clear evidence that the decision was manifestly unsupported by reason." *In re K.L.D.*, 210 N.C. App. 747, 749, 709 S.E.2d 409, 411 (2011) (citing *In re N.B.,* 167 N.C. App. 305, 605 S.E.2d 488 (2004)).  Dispositional orders are reviewed on appeal for abuse of discretion.  *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002).

### 2. N.C. Gen. Stat. § 7B-2501(c) Findings

¶ 39    Walter asserts the trial court abused its discretion by failing to properly consider each factor listed in N.C. Gen. Stat. § 7B-2501(c).  After a juvenile has been adjudicated delinquent, the trial court is required to choose a disposition within the guidelines of N.C. Gen. Stat. § 7B-2508 (2019).  The trial court's decision must include the factors contained in N.C. Gen. Stat. § 7B-2501(c).

> [T]he court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile, based upon:
>
>> (1) The seriousness of the offense;
>>
>> (2) The need to hold the juvenile accountable;
>>
>> (3) The importance of protecting the public safety;
>>
>> (4) The degree of culpability indicated by the circumstances of the particular case; and

> (5) The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.

N.C. Gen. Stat. § 7B-2501(c) (2019).

¶ 40　　The "trial court must consider each of the five factors in crafting an appropriate disposition." *In re I.W.P.*, 259 N.C. App. 254, 261, 815 S.E.2d 696, 702 (2018). "The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition . . . to allow a reviewing court to determine . . . whether the judgment and the legal conclusions which underlie it represent a correct application of the law." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980).

¶ 41　　Walter argues the trial court did not make the required findings of facts. We disagree. The trial court provided a thorough writing of its findings at the conclusion of the disposition hearing. Addressing N.C. Gen. Stat. § 7B-2501(c)(1) the seriousness of the offense; and § 7B-2501(c)(3) the importance of protecting the public safety, the trial court found: "The Juvenile admitted to two unrelated offenses of Felony Breaking and Entering and Breaking and Entering a Motor Vehicle. This court notes the Juvenile's ongoing criminal activity has escalated from misdemeanor offenses to felonies."

¶ 42　　The court noted the seriousness of the offense by checking box nine of the disposition order indicating, "[t]he juvenile has been adjudicated for a violent or serious offense and Level 3 is authorized by G.S. 7B-2508." The trial court further

illustrated the importance of protecting public safety by referencing Walter's increasingly aggressive and assaultive behaviors toward himself and others.

¶ 43        Addressing § 7B-2501(c)(2), the need to hold the juvenile accountable, the court found: "The court made several attempts to work with the Juvenile and get appropriate services in place." The court noted Walter had several offenses pending, his criminal activity was ongoing and escalating, and his aggressive and assaultive behaviors and language. Further, the trial court addressed the need for accountability by highlighting Walter's violent behaviors and flight which had consistently occurred and increased despite DSS' ineffective interventions and placements.

¶ 44        Addressing § 7B-2501(c)(4), the degree of culpability indicated by the circumstances of the particular case, the trial court found: "this court continued disposition for an additional three months to give the Juvenile an opportunity to comply." Further, "the Juvenile displayed aggressive and assaultive behavior and inappropriate language." Finally, the trial court found, "this Juvenile has had numerous evaluations" and noted Walter's admissions to the charges, multiple offenses, and the escalating nature of his criminal offenses to felonies.

¶ 45        Finally, addressing § 7B-2501(c)(5), the rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment, the trial court considered the degree of culpability and flight by specifically listing Walter's admissions, the

multiple occasions he went AWOL and fled from his treatment facilities, placements and court dates. Finally, the court stated: "Over the last month, the Juvenile's behavior has improved and there has been some progress at New Hope" noting its belief the treatment would be helpful to Walter.

¶ 46 Throughout the course of the trial court's history with Walter, it had considered and implemented multiple treatment options and lesser restraints. The trial court relied upon twelve (12) reports from organizations which had been working with Walter during the preceding years. The trial court then provided detailed findings of fact leading to its conclusion that Walter's best interest and the safety of the public would be served by his commitment to the YDC. After all of these considerations the trial court, in its discretion, found and concluded:

> Due to the escalating nature of the Juvenile's charges and the lack of treatment due to inappropriate placement options and the Juvenile's AWOL behaviors, this Court Orders that the Juvenile be committed to the Youth Development Center.

¶ 47 After reviewing the overwhelming evidence contained in the trial court's written findings, the dispositional order contains appropriate findings of fact which illustrate the failures of the less restrictive placements and methods, and Walter's need for commitment. No abuse of discretion is shown. The order of the trial court is affirmed.

## VI. Conclusion

The trial court clearly informed Walter of his right to confrontation by following the "Transcript of Admission" form almost *verbatim*. The trial court properly followed Form AOC-J-410 during Walter's admissions. The court met the statutory requirements to include date of the offenses, the felony charges, and date of the adjudication, and the supporting findings beyond a reasonable doubt.

Finally, the trial court provided written findings of fact based upon Walter's extensive criminal history and his violent and recalcitrant behaviors to support its conclusion of delinquency of the juvenile and disposition to commit to YDC. The juvenile has failed to show any prejudicial errors in the trial court's procedures, orders, dispositions, or commitment. The order is affirmed. *It is so ordered.*

AFFIRMED.

Judge GORE concurs.

Judge MURPHY dissents with separate opinion.

No. COA20-164 – *In re W.M.C.M.*

MURPHY, Judge, dissenting.

The Majority concludes the trial court properly adjudicated Walter delinquent. *Supra* at ¶¶ 26, 35. Based upon binding precedent, I respectfully dissent for two reasons: (A) the trial court's colloquy with Walter during the adjudication hearing was inadequate; and (B) the trial court's adjudication order was insufficient.

## ANALYSIS

### A. Sufficiency of the Colloquy–N.C.G.S. § 7B-2407

The Majority determines the colloquy between the trial court and Walter met the requirements of N.C.G.S. § 7B-2407(a) and rests its analysis on *In re A.W.* and *In re C.L. Supra* at ¶¶ 24-26. N.C.G.S. § 7B-2407(a) states:

> (a) The court may accept an admission from a juvenile *only after* first addressing the juvenile personally and:
>
> (1) Informing the juvenile that the juvenile has a right to remain silent and that any statement the juvenile makes may be used against the juvenile;
>
> (2) Determining that the juvenile understands the nature of the charge;
>
> (3) Informing the juvenile that the juvenile has a right to deny the allegations;
>
> (4) Informing the juvenile that by the juvenile's admissions the juvenile waives the juvenile's right to be confronted by the witnesses against the juvenile;
>
> (5) Determining that the juvenile is satisfied with the juvenile's representation; and
>
> (6) Informing the juvenile of the most restrictive disposition on the charge.

N.C.G.S. § 7B-2407(a) (2019) (emphasis added). A trial court must "strictly comply with [N.C.G.S. § 7B-2407]" "[by, at] '*a very minimum, . . . asking a juvenile each of the six specifically mandated questions* listed in N.C.G.S. § 7B-2407(a).'" *In re A.W.*, 182 N.C. App. 159, 161-62, 641 S.E.2d 354, 356 (2007) (quoting *In re T.E.F.*, 359 N.C. 570, 576, 614 S.E.2d 296, 299 (2005)).

¶ 52    The Majority acknowledges the strict compliance to N.C.G.S. § 7B-2407(a) required by *In re T.E.F.* and *In re A.W.* to adjudicate a juvenile delinquent when the juvenile admits guilt, but then applies a much more lenient and inapplicable approach from *In re C.L.* to the present case. *Supra* at ¶¶ 19-26. According to the Majority's approach, "[N.C.G.S. § 7B-2407(a)] does not require the exact statutory language to be used during the colloquy, but rather requires the court to orally and clearly inform the juvenile of his rights[.]" *Supra* at ¶ 24. To bolster this assertion, the Majority inappropriately applies *In re C.L.* to the present matter, where we held a trial court is required to "adequately apprise[] [a juvenile] of the consequences of making [the] admission" so the juvenile can make an "'informed choice' to admit responsibility[.]" *In re C.L.*, 217 N.C. App. 109, 116, 719 S.E.2d 132, 136 (2011).

¶ 53    Contrary to the Majority's interpretation, *In re C.L.* is inapplicable to this matter because N.C.G.S. § 7B-2407(a) was not at issue in that case. In *In re C.L.*, we stated:

> Although this Court has adopted a totality of the

circumstances test for use in evaluating the voluntariness of guilty pleas tendered by adult defendants, this Court and the Supreme Court have declined to require the use of such an analysis for purposes of evaluating the sufficiency of a trial court's compliance with [N.C.G.S.] § 7B-2407. However, *while the strict compliance approach delineated by this Court and the Supreme Court . . . rested on the statutory language of [N.C.G.S.] § 7B-2407, [the juvenile's] argument in this case rests upon [N.C.G.S.] § 7B-2405(6) and [N.C.G.S.] § 15A-1022(d) rather than any sort of alleged noncompliance with [N.C.G.S.] § 7B-2407. For that reason*, the extent to which [the juvenile] is entitled to relief from the trial court's adjudication order *hinges upon* the proper application of *the totality of the circumstances test .
. . .* Thus, the ultimate issue before us in connection with [the juvenile's] challenge to the acceptance of his admission of responsibility is whether the trial court's failure to make the inquiry specified in [N.C.G.S.] § 15A-1022(d) either affected [the juvenile's] decision to plead or undermined the plea's validity.

*Id.* at 115, 719 S.E.2d at 135-36 (emphasis added) (internal citations and marks omitted). While we applied a totality of the circumstances approach in reviewing the colloquy at issue in *In re C.L.*, we were not reviewing for the trial court's alleged noncompliance with N.C.G.S. § 7B-2407(a), but rather N.C.G.S. § 7B-2405(6) and N.C.G.S. § 15A-1022(d). Here, Walter specifically argues his colloquy did not follow the requirements of N.C.G.S. § 7B-2407(a). The Majority's reliance on *In re C.L.* to reduce strict compliance with N.C.G.S. § 7B-2407(a) under *In re T.E.F.* and *In re A.W.* is beyond our authority.

Instead, the requirement of strict compliance with N.C.G.S. § 7B-2407(a) from

*MURPHY, J., dissenting.*

*In re T.E.F.* and *In re A.W.* still applies to colloquies in a juvenile delinquency determination when the juvenile admits guilt. *In re T.E.F.*, 359 N.C. at 576, 614 S.E.2d at 299; *In re A.W.*, 182 N.C. App. at 161-62, 641 S.E.2d at 356. In accordance with *In re T.E.F.*, a trial court must "specifically question" the juvenile by "asking . . . each of the six specifically mandated questions listed in N.C.G.S. § 7B-2407(a)." *In re T.E.F.*, 359 N.C. at 575-76, 614 S.E.2d at 299. Our Supreme Court referred to the "six specific steps" in N.C.G.S. § 7B-2407(a) not only as "paramount" and "necessary," but also as "mandatory language" when a trial court accepts "a juvenile's admission as to guilt during an adjudicatory hearing[,]" and are not "mere suggestions or a general guide for our trial courts[.]" *Id.* at 574-75, 614 S.E.2d at 298-99. Our Supreme Court "recognized . . . the State has a *greater* duty to protect the rights of a respondent in a juvenile proceeding than in a criminal prosecution[,]" and those "juvenile rights would certainly be undermined by ignoring the mandatory language of N.C.G.S. § 7B-2407[.]" *Id.* at 575, 614 S.E.2d at 299 (internal citations and marks omitted).[1]

¶ 55      Here, the trial court did not comply with the requirements of N.C.G.S. § 7B-

---

[1] In applying a totality of the circumstances approach, the Majority applies the approach suggested by Judge Levinson's dissenting opinion when that matter was before this Court, an approach rejected by us and our Supreme Court. *In re T.E.F.*, 167 N.C. App. 1, 11-14, 604 S.E.2d 348, 354-56 (2004) (Levinson, J., dissenting), *aff'd*, *In re T.E.F.*, 359 N.C. 570, 614 S.E.2d 296.

2407(a)(4); specifically, the trial court did not ask Walter whether he understood that by his "admissions [he] waive[d] [his] right to be *confronted by* the witnesses against [him.]" N.C.G.S. § 7B-2407(a)(4) (2019) (emphasis added). Instead, the trial court asked Walter whether he understood he had "the right to ask witnesses questions during a hearing[.]" This is not what *In re T.E.F.* requires.

¶ 56        The trial court deviated from the language of N.C.G.S. § 7B-2407(a)(4) in an apparent attempt to explain Walter's rights, but, in doing so, the trial court did not specifically state Walter had a right to be confronted by witnesses against him. The right to confront the witnesses against oneself is a greater right than to ask questions of the witnesses the State chooses to call. In *Coy v. Iowa*, the United States Supreme Court discussed the Confrontation Clause, observing:

> The Sixth Amendment gives a criminal defendant the right "to be confronted with the witnesses against him." This language "comes to us on faded parchment," *California v. Green*, 399 U.S. 149, 174, 90 S.Ct. 1930, 1943, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring), with a lineage that traces back to the beginnings of Western legal culture. There are indications that a right of confrontation existed under Roman law. The Roman Governor Festus, discussing the proper treatment of his prisoner, Paul, stated: "It is not the manner of the Romans to deliver any man up to die before the accused has met his accusers face to face, and has been given a chance to defend himself against the charges." Acts 25:16. It has been argued that a form of the right of confrontation was recognized in England well before the right to jury trial. Pollitt, The Right of Confrontation: Its History and Modern Dress, 8 J.Pub.L. 381, 384–387 (1959).

*MURPHY, J., dissenting.*


Most of this Court's encounters with the Confrontation Clause have involved either the admissibility of out-of-court statements, [*see*]*, e.g., Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), or restrictions on the scope of cross-examination, *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cf. *Delaware v. Fensterer*, 474 U.S. 15, 18–19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (*per curiam*) (noting these two categories and finding neither applicable). The reason for that is not, as the State suggests, that these elements are the essence of the Clause's protection—but rather, quite to the contrary, that there is at least some room for doubt (and hence litigation) as to the extent to which the Clause includes those elements, whereas, as Justice Harlan put it, "[s]imply as a matter of English" it confers at least "a right to meet face to face all those who appear and give evidence at trial." *California v. Green, supra*, at 175, 90 S.Ct., at 1943–1944. Simply as a matter of Latin as well, since the word "confront" ultimately derives from the prefix "con-" (from "contra" meaning "against" or "opposed") and the noun "frons" (forehead). Shakespeare was thus describing the root meaning of confrontation when he had Richard the Second say: "Then call them to our presence—face to face, and frowning brow to brow, ourselves will hear the accuser and the accused freely speak[. . .]." Richard II, Act 1, sc. 1.

We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. [*See*] *Kentucky v. Stincer*, 482 U.S. 730, 748, 749–750, 107 S.Ct. 2658, 2668, 96 L.Ed.2d 631 (1987) (MARSHALL, J., dissenting). For example, in *Kirby v. United States*, 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899), which concerned the admissibility of prior convictions of codefendants to prove an element of the offense of receiving stolen Government property, we described the operation of

*MURPHY, J., dissenting.*

the Clause as follows: "[A] fact which can be primarily established only by witnesses cannot be proved against an accused [. . .] except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases." Similarly, in *Dowdell v. United States*, 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911), we described a provision of the Philippine Bill of Rights as substantially the same as the Sixth Amendment, and proceeded to interpret it as intended "to secure the accused the right to be tried, so far as facts provable by witnesses are concerned, by only such witnesses as meet him face to face at the trial, who give their testimony in his presence, and give to the accused an opportunity of cross-examination." More recently, we have described the "literal right to 'confront' the witness at the time of trial" as forming "the core of the values furthered by the Confrontation Clause." *California v. Green, supra*, at 157, 90 S.Ct., at 1934–1935. Last Term, the plurality opinion in *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987), stated that "[t]he Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."

The Sixth Amendment's guarantee of face-to-face encounter between witness and accused serves ends related both to appearances and to reality. This opinion is embellished with references to and quotations from antiquity in part to convey that there is something deep in human nature that regards face-to-face confrontation between accused and accuser as "essential to a fair trial in a criminal prosecution." *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). What was true of old is no less true in modern times. President Eisenhower once described face-to-face confrontation as part of the code of his hometown of Abilene, Kansas. In

*MURPHY, J., dissenting.*

Abilene, he said, it was necessary to "[m]eet anyone face to face with whom you disagree.  You could not sneak up on him from behind, or do any damage to him, without suffering the penalty of an outraged citizenry [. . .].  In this country, if someone dislikes you, or accuses you, he must come up in front.  He cannot hide behind the shadow."  Press release of remarks given to the B'nai B'rith Anti-Defamation League, November 23, 1953, quoted in Pollitt, *supra*, at 381.  The phrase still persists, "Look me in the eye and say that."  Given these human feelings of what is necessary for fairness,[] the right of confrontation "contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails."  *Lee v. Illinois*, 476 U.S. 530, 540, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986).

The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it.  A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.  He can now understand what sort of human being that man is."  Z. Chafee, The Blessings of Liberty 35 (1956), quoted in *Jay v. Boyd*, 351 U.S. 345, 375–376, 76 S.Ct. 919, 935–936, 100 L.Ed. 1242 (1956) (Douglas, J., dissenting).  It is always more difficult to tell a lie about a person "to his face" than "behind his back."  In the former context, even if the lie is told, it will often be told less convincingly.  The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions.  Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss–the right to cross-examine the accuser; both "ensur[e] the integrity of the fact-finding process."  *Kentucky v. Stincer, supra*, 482 U.S., at 736, 107 S.Ct., at 2662.  The State can hardly gainsay the profound effect upon a witness of standing in

> the presence of the person the witness accuses, since that
> is the very phenomenon it relies upon to establish the
> potential "trauma" that allegedly justified the
> extraordinary procedure in the present case. That face-to-
> face presence may, unfortunately, upset the truthful rape
> victim or abused child; but by the same token it may
> confound and undo the false accuser, or reveal the child
> coached by a malevolent adult. It is a truism that
> constitutional protections have costs.

*Coy v. Iowa*, 487 U.S. 1012, 1015-20, 101 L. Ed. 2d 857, 863-66 (1988) (footnote

omitted).

¶ 57        Similar to the trial court's failure to ask the juvenile whether he "was satisfied

with his legal representation" in *In re T.E.F.*, as well as the trial court's failure to

inform the juvenile "of his right to remain silent and the risk that any statements

may be used against him . . . or of his right to deny the allegations" in *In re A.W.*, the

trial court here did not ask Walter whether he understood his admission of guilt

waived his right to be confronted by the witnesses against him. N.C.G.S. § 7B-

2407(a)(4) (2019); *In re T.E.F.*, 359 N.C. at 575, 614 S.E.2d at 299; *In re A.W.*, 182

N.C. App. at 161, 641 S.E.2d at 356.

¶ 58        We must follow our Supreme Court's precedent in *In re T.E.F.*, as well as our

application of that precedent in *In re A.W.* The Record in this case is clear that the

juvenile suffered no prejudice in the acceptance of the plea offer from the State and

is likely to suffer a more detrimental result from the setting aside of his agreement

with the State. However, we cannot forego this precedent and create a totality of the

circumstances approach to N.C.G.S. § 7B-2407(a) colloquies in a juvenile delinquency determination when the juvenile admits guilt. Even though the trial court complied with the standard form AOC-J-410 Transcript of Admission by Juvenile as recommended in dicta from our Supreme Court in *In re T.E.F.*, I would reluctantly reverse the trial court's orders and remand for further proceedings. *In re T.E.F.*, at 576, 614 S.E.2d 296, 299 (2005) ("We note that the Administrative Office of the Courts has available a standard form incorporating these statutory areas of inquiry.").

**B. Sufficiency of the Written Adjudication Order–N.C.G.S. § 7B-2411**

¶ 59      The Majority also determines the trial court's adjudication order complied with N.C.G.S. § 7B-2411 and cites *In re K.C.* and *In re J.V.J.* to support its conclusion. *Supra* at ¶ 35. However, neither case supports the Majority's conclusion "the trial court's adjudication order of delinquency met and contained all of the requirements of [N.C.G.S. § 7B-2411]." *Supra* at ¶ 35.

¶ 60      In accordance with N.C.G.S. § 7B-2411,

> [i]f the [trial] court finds that the *allegations in the petition* have been proved as provided in [N.C.G.S. §] 7B-2409, the [trial] court *shall so state* in a written order of adjudication, which shall include, but not be limited to, the date of the offense, the misdemeanor or felony classification of the offense, and the date of adjudication. If the [trial] court finds that the allegations have not been proved, the [trial] court shall dismiss the petition with prejudice and the juvenile shall be released from secure or nonsecure custody if the juvenile is in custody.

N.C.G.S. § 7B-2411 (2019) (emphasis added); *see* N.C.G.S. § 7B-2409 (2019) ("The allegations of a petition alleging the juvenile is delinquent shall be proved beyond a reasonable doubt. The allegations in a petition alleging undisciplined behavior shall be proved by clear and convincing evidence."). The plain language of the statute requires a trial court's order adjudicating a juvenile delinquent to at least find the *allegations* in the petition have been proved beyond a reasonable doubt. *Id.* That is not what happened here, where the trial court merely found "beyond a reasonable doubt that the juvenile[] is adjudicated delinquent."

In *In re K.C.*, we held that when the trial court's written adjudication order "*clearly states* that the [trial] court considered the evidence and adjudicated [the juvenile] delinquent *as to the petition's allegation of simple assault* beyond a reasonable doubt[,] . . . the [trial] court's adjudication order satisfies [N.C.G.S. §] 7B-2411[.]" *In re K.C.*, 226 N.C. App. 452, 461, 742 S.E.2d 239, 245 (2013) (emphasis added). Specifically, the trial court's order in *In re K.C.* stated "the [trial] court finds beyond a reasonable doubt that the juvenile committed the offense of Sexual Battery and Simple Assault and he is ADJUDICATED DELINQUENT." *Id.* at 460, 742 S.E.2d at 245. Unlike *In re J.V.J.*, where the order lacked a finding the allegations were proved beyond a reasonable doubt, the trial court's order in *In re K.C.* contained a finding the allegation "of Sexual Battery and Simple Assault" had "been proven

beyond a reasonable doubt[,]" and we affirmed "its simple assault adjudication as supported by sufficient findings of fact." *Id.* at 460-61, 742 S.E.2d at 245.

¶ 62        In *In re J.V.J.*, we noted "*at a minimum*, [N.C.G.S. §] 7B-2411 requires a [trial] court to state in a written order that the *allegations* in the petition have been proved beyond a reasonable doubt." *In re J.V.J.*, 209 N.C. App. 737, 740, 707 S.E.2d 636, 638 (2011) (emphasis added) (internal marks omitted).  We held the adjudication order failed to include the requisite findings when it

> fail[ed] to address any of [the allegations in the petition] as
> required by [N.C.G.S. §] 7B-2411. Indeed, the adjudication
> order does not even summarily aver that the allegations in
> the petition have been proved. . . . [The] findings
> insufficiently address[ed] the allegations in the petition[,] .
> . . [and] we remand[ed] [the] case to the trial court to make
> the statutorily mandated findings[.]

*Id.* at 740-41, 707 S.E.2d at 638 (internal marks omitted).

¶ 63        Here, the trial court's order only stated it had considered the admission and evidence and found "beyond a reasonable doubt that the juvenile[] is adjudicated delinquent."  While the charges were listed below the quote, there was no mention that the *allegation* was proved beyond a reasonable doubt, as N.C.G.S. § 7B-2411 requires.  *In re J.V.J.* and *In re K.C.* do not change, but rather apply that statutory requirement.  Additionally, neither *In re K.C.* nor *In re J.V.J.* declares a trial court's order is sufficient for including a finding that the adjudication, and not the allegation, was proved beyond a reasonable doubt.  The trial court's order did not include any

finding resembling the finding in the trial court's order in *In re K.C.* that the allegation was proved beyond a reasonable doubt. Rather, similar to the order at issue in *In re J.V.J.*, here "the adjudication order does not even summarily aver that the allegations in the petition have been proved[,]" and we should "remand this case to the trial court to make the statutorily mandated findings[.]" *In re J.V.J.*, 209 N.C. App. at 740-41, 707 S.E.2d at 638 (internal marks omitted).

## CONCLUSION

In light of the insufficiency of the colloquy under N.C.G.S. § 7B-2407(a) and the insufficiency of the trial court's adjudication order under N.C.G.S. § 7B-2411, I would reverse the trial court's orders and remand for further proceedings. In light of the inadequacy of these aspects of the adjudicatory stage of the proceedings appealed here, I do not analyze whether the trial court abused its discretion in its choice of a disposition under N.C.G.S. § 7B-2501(c). I respectfully dissent.